The defendant in error, hereinafter called plaintiff, on September 18, 1918, with his wife, executed an oil and gas lease to the plaintiff in error, hereinafter called defendant, on 227 acres of land in sections 24 and 19, T. 19 N, ranges 5 and 6, east, in Payne county, the same being for one year, or as long thereafter as oil and gas were produced in paying quantities, and the royalty provided was one-fourth of the oil and gas produced. This lease was not delivered at the time it was executed, but on October 2, 1918, the parties, entered into a written agreement, in which they instructed the First National Bank of Yale to hold the lease they had placed in keeping with the bank for a period of 15 days, during which time the defendant was to deposit with the bank $1,000 to be held in connection with the lease contract until January 1, 1919, with the understanding that if the defendant was drilling on the land at that time the bank should deliver to him the said lease contract and the $1,000. If defendant was not drilling at that time, it was further agreed he could place in the bank to the credit of plaintiff $500 and have an extension of 60 days in which to commence drilling, and if the work of drilling was not commenced within this time, or by March 1, 1919, then the lease contract and the $1,000 should be delivered to the plaintiff and in the event of drilling, the lease and $1,000 were to be delivered to the defendant. Before the expiration of this 60 days the parties made a second escrow agreement, dated February 19, 1919, in which they recited the matters and things above stated and continued as follows:
"That the said Charles A. Minnick agreed in said lease that he had a good and lawful right to make said lease to the said O.A. Garr, together with a good and valid title; this being the case the said O.A. Garr has acted in good faith, but on account of a certain oil and gas mining lease made to the Chanute Refining Company and later assigned to the Sinclair Oil Gas Company, which is now against said title, and the said Charles A. Minnick has brought suit against said Sinclair Oil Gas Company for the purpose of obtaining a release of said oil and gas lease, and has asked the court to set said lease aside; this being the case it is agreed by the said Charles A. Minnick and the said O.A. Garr that the said O.A. Garr shall not be required to pay the said Charles A. Minnick any further sum of money, and shall not be required under the terms of said oil and gas lease, or under any escrow agreement, to commence drilling for oil and gas on the above-described 227 acres of land until such time as the title is cleared of its present encumbrances; however the said O.A. Garr shall have the right to enter upon said lease at any time for the purpose of developing the same that he may deem necessary, and shall have the said $1,000 in the hands of said bank until he begins drilling, which shall not, be more than 60 days after the above-mentioned incumbrances is discharged from record against said land.
"It is expressly agreed and understood that the term of said oil and gas lease is for a period of one year from September 18, 1918, and it is further agreed and understood by both parties hereto that in the event said litigation continues and deprives the said O.A. Garr of sufficient time in which to complete a well before the said term of the lease expires, then in that case the said O.A. Garr shall have an additional length of time in which to complete said well and said lease shall he held and enjoyed by the said O.A. Garr, the same as if there had been no interruption in the length of time.
"The express purpose of this agreement is to give the said O.A. Garr an additional length of time in which to comply with the provisions of said lease as set forth therein the same as there had been no hinderance whatever, said time to equal the amount of time said lease is in litigation." *Page 111 
The action to clear the title was terminated in plaintiff's favor in May, 1921, and on May 20, 1921, Sinclair Oil Gas Company executed a release of the contested lease contract. The defendant failed and refused to fulfill the agreement to commence the work of drilling on the land and forbade the bank to turn the $1,000 to the plaintiff, and after the 60 days expired, plaintiff demanded of the bank the lease contract and the $1,000, which the bank refused to deliver without the consent of defendant, and the defendant would not consent, and the suit was brought against the bank and the defendant. The bank filed a disclaimer and offered to turn the money into court subject to its orders. The defendant filed a general demurrer to the petition, which being overruled by the court, he filed an answer consisting of a general denial; admission of execution of the several contracts; claimed the $1,000 was in the nature of a forfeiture penalty, and enforcement of this part of the contract illegal; that the Sinclair lease incumbrance released him from extension payments; that plaintiff induced defendant by misrepresentations as to the time he had entered suit against the Sinclair Company, to enter into the escrow agreement and deposit the $1,000 and pay $500; that there was a breach of warranty on the part of plaintiff by the Sinclair incumbrance; that he was forced by agent of plaintiff to pay $40 for permission to enter the premises with his well-drilling machinery, and $65 for rent for ground on which to place his tool house; that his title was disturbed and destroyed by the delays and the Sinclair lease and the $500 he paid should be returned to him because there was no consideration for it, and he was damaged $500; and, in the failure of title, be lost the use of the $1,000 deposited and he expended $1,000 to begin drilling, and was damaged in the sum of $20,067, for which he prays judgment and $1,000 attorneys' fees. Plaintiff filed general denial for a reply and the issues were tried to a jury and resulted in a verdict and judgment for plaintiff in the sum of $1,000, and the defendant appeals by petition in error and case-made, alleging 15 assignments of error and urging them under six propositions, which we will consider in their order.
1. The first proposition is to the effect that the $1,000 sought to be recovered by the plaintiff was a penalty laid on defendant for his failure to perform the condition of the contract to begin drilling on the land, as therein provided, and in violation of section 5067, Comp. Stat. 1921.
This section cited and relied upon by the defendant reads as follows:
"Penalties imposed by contract for any nonperformance thereof are void. But this section does not render void such bonds or obligations, penal in form, as have been heretofore commonly used; it merely rejects and avoids the penal clauses."
The next two sections should be considered in connection with this section. Section 5068 provides as follows:
"Every contract by which the amount of damages to be paid or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void except as expressly provided by the next section."
The next section, being 5069, reads as follows:
"A stipulation or condition in a contract providing for the payment of an amount which shall be presumed to be the amount of damages sustained by a breach of such contract, shall be held valid when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."
These three sections of the statute, as construed by many cases cited under them, define a penalty for forfeiture as illegal and liquidated damages as legal; that is, if the amount agreed to be given up by one party for failure to perform a contract is a penalty, where there are no damages for the breach or where the damages are easily ascertained, the same is an illegal penalty, but if the amount agreed an is in a ease where there are damages impracticable or extremely difficult of determination, then the same must be construed by the court as liquidated damages for the breach. McAlester v. Williams,77 Okla. 65, 186 P. 461; Sierzek et al. v. Smith et al.,86 Okla. 797, 202 P. 611; Beaty v. Armstrong, 95 Okla. 109,218 P. 516.
Applying this rule to the case at bar, it appears from the nature of the contract providing for the payment of $1,000 for failure to commence drilling on, plaintiff's lands within 60 days as agreed upon it was for damages very difficult of determination. From the testimony in the case it appears that the plaintiff's lands were situated in a proven oil field and where the rentals for oil and gas leases were very high, as high as $200 an acre, and plaintiff leased his lands to the defendant, not in consideration of the reasonable rental value, but in consideration of a one-fourth interest in the *Page 112 
oil and gas produced saved from drilling and developing the lands for this purpose, and when the defendant failed to commence drilling and operating on the lease according to the agreement, the plaintiff lost the rental value as well as the prospective value involved in the development, and he would be damaged by the defendant's breach of the contract, but the amount of the damages would be very difficult to determine, which would bring the plaintiff's cause of action within the rule of liquidated damages, as above stated.
Defendant admitted the failure to comply with the first escrow agreement to commence drilling by January 1, 1919, or by March 1, 1919, and stated that after this agreement was made and he had placed machinery and equipment on the land to commence the work of drilling he discovered a prior lease made by plaintiff to the Chanute Refining Company and assigned to Sinclair Oil Company, which did not expire until May 10, 1921, and he claims he could not be safe in proceeding further with the development. But the evidence discloses that he knew about this lease before his lease contract was made with the plaintiff, as he was the agent of the Chanute Refining Company in negotiating the contract, and he knew it was understood at the time the contracts were made that the Chanute contract was of no force and effect and this conviction was so strong that on February 19, 1919, plaintiff and defendant entered into a second escrow contract in which it was agreed that the time for drilling as provided in the lease contract and the first escrow contract should be extended and should commence 60 days after plaintiff, by action in court, should clear the title of the Chanute lease, which was done May 28, 1921, and defendant made no complaint of said contract for this purpose till the 60 days expired after the Chanute lease was released against the lands.
In the meantime the price of oil had declined and the market was dull and the defendant had become interested in the development of leases in the state of Texas, and he declined to drill on plaintiff's land and forbade the bank to deliver the $1,000 to the defendant. Under this state of facts, we do not think the defendant acted in good faith In making the second escrow contract, or making it in good faith, failed to keep good faith in carrying it out or in the breach thereof, and his failure to perform the contract within the time and under the conditions set out in the last agreement was a detriment to the plaintiff for which the $1,000 is to satisfy as liquidated damages.
2. Defendant's second proposition is to the effect that plaintiff warranted the title and peaceable possession of the land under the lease contract and, by the Chanute lease, breached this warranty, and the long delay resulted in great loss to the defendant, and the court should have instructed the jury on the subject of what constituted a breach of warranty.
We do not think this proposition tenable for the reason the evidence discloses that the defendant had actual knowledge and was personally interested in the Chanute lease at the time the lease contract was made with the plaintiff, and that his interest in the Chanute lease was a two-sixtieth part, and in the second escrow contract the agreement was made with reference to this Chanute lease, and whatever right the defendant had to claim a breach of warranty, by reason of this lease, he contracted it away by this second escrow agreement, which was in writing, and which changed the time of drilling and preserved the rights of the parties under the lease, contract.
Section 5081, Comp. Stat. 1921., provides:
"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, or not otherwise."
We do not think there were any facts of breach of warranty for the court to base an instruction to the jury on, and we, therefore, think the defendant was bound by the lease contract as changed by the escrow agreement. 13 C. J. 594, section 610; 13 C. J. 595, section 615; Brown v. Coppedge 54 Okla. 88,153 P. 817; Levin v. Cook. 84 Okla. 55, 202 P. 299.
3. The third proposition is to the effect that the court erred in falling and refusing to instruct the jury that the oil and gas lease in question was for a term of one year from September 18, 1918, and the instruments in writing were not sufficient to extend the term beyond that date. There is no merit in this proposition for the reason the defendant made no request for such an instruction, and for the further reason such an instruction would have been erroneons, because, taking the three contracts together, it was clearly the intention of the parties to extend the life of the lease as the time for drilling was extended.
4. Defendant's fourth proposition is to the effect that the court erred in failing to instruct the jury that, under the terms of *Page 113 
the lease, the defendant had the right to enter upon the land for the purpose of placing tools, machinery and material, and property for drilling operations, and the right to construct houses thereon for the purpose of housing and boarding employes and housing tools and machinery. It appears from the record that there was no request for such an instruction and this court has often held that complaint of failure to instruct cannot be urged without there was a request for the particular instruction, but if the request had been made the same should have been refused for the reason the evidence discloses there was no obstruction on the part of plaintiff to defendant's entering upon the premises and doing all things mentioned in the complaint.
5. Defendant's fifth proposition is to the effect that the judgment is not supported by the evidence and is against the evidence. We have examined the entire record as stated in the briefs of both parties as well as the case-made and we think the evidence is amply sufficient to sustain the judgment and the court was right in overruling the motion for a new trial on this ground.
6. The sixth proposition is to the effect that the court's instruction No. 1 did not fairly and clearly present to the jury the defendant's theory of the case and his different defenses. The paragraph complained of is as follows:
"The defendant, O.A. Garr, for his answer and cross-petition, denies, each and every allegation of the petition, except as hereinafter admitted to be true. The defendant admits that the plaintiff owns the land described in the petition and admits the execution of the various instruments set out in the plaintiff's petition, and further alleges that he was unable to comply with the terms of the contract, for the reason that the plaintiff did not succeed in quieting the title to his land within the year provided for in the original leasing agreement, and consequently he could not begin drilling on the well as provided for in said contract.
"And for his cross-petition, the defendant, O.A. Garr, alleges that the plaintiff fraudulently and knowingly represented to the defendant that the land was clear and free from all oil and gas leases and that he had a good and legal right to lease his premises to the defendant, and that the defendant, relying thereon, paid the sum of $500 on January 1, 1919, and that the defendant. O.A. Garr. never received any consideration for the payment of the $500 and prays judgment against the plaintiff for the sum of $500 and interest from January 1, 1919."
The defendant did not present an instruction as a substitute or correction for this paragraph and the same rule applies in answer to this proposition we invoked under the fourth proposition above, and there being no constitutional or statutory rights of defendant violated, he is not in a position to complain on motion for new trial or on appeal. Heindselman v. Harper, 91 Okla. 50, 215 P. 771, a recent Oklahoma case; Rose v. Cotton, 84 Okla. 148, 202 P. 1003 But if the defendant could urge the objection, we do not think the complaint is tenable in the light of the pleadings, the evidence, and the views as above expressed.
We think the defendant had a fair trial and the judgment should be affirmed.
By the Court: It is so ordered.