## GREEN-BEEKMAN CONST. CO. v. KLEIN.

No. 16928—Opinion Filed July 13, 1926.

Rehearing Denied April 5, 1927.

### Sales—Repudiation by Buyer—Measure of Damages—Fabricated Material.

In an action for breach of contract, where it appears that plaintiff, pursuant to such contract, ordered material for the purpose of fabricating same in compliance with plans and specifications, but before same was fabricated into steel tubes as provided by the contract defendant unjustifiably repudiated said contract, plaintiff's measure of damages

for breach of contract is the difference between what he was able to sell such material for to other parties and the contract price to defendant of the fabricated material. The application of this rule is not defeated by the failure of plaintiff to prepare and submit shop drawings of the fabricated material where such failure is due to the repudiation of the contract by defendant.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Lucius Babcock, Judge.

Action by J. B. Klein, sole owner and doing business as J. B. Klein Iron & Foundry Company, against the Green-Beekman Construction Company. Judgment for plaintiff, and defendant brings error. Affirmed.

F. A. Rittenhouse, Frank E. Lee, John F. Webster, Olive R. Rittenhouse, and R. U. Livesay, for plaintiff in error.

A. M. Beets and O. K. Wetzel, for defendant in error.

Opinion by PINKHAM, C. This was an action in damage for the alleged violation of a contract. On August 8, 1924, the plaintiff in error, the Green-Beekman Construction Company, entered into a contract with Oklahoma county and Oklahoma City for the construction of a viaduct across the North Canadian river in Oklahoma City. Thereafter, on August 15, 1924, the plaintiff in error entered into a contract with J. B. Klein, sole owner and doing business as J. B. Klein Iron & Foundry Company, defendant in error, by the terms of which the defendant in error agreed

"to furnish (the plaintiff in error) for the sum of $5.25 per hundredweight, steel tubes in connection with the above project, of the dimensions and sizes of material as specified on plans and in specifications as prepared by city and county engineers. Shop drawing to be submitted for their approval. Tubes to be assembled and completed riveted in two sections to the pier and delivered by truck as close to erection point as road conditions will permit.* * *"

On the 23rd day of August, 1924, in pursuance to this contract, the defendant in error ordered the materials necessary to be used in the construction of the tubes from the Central Iron & Steel Company, of Harrisburg, Pa. It appears that in order to comply with the requirements of the general plans and specifications on file in the office of the county and city engineer it was necessary to have the steel plates cut in sizes so that after being riveted together the tubes would be of the height and diameter called for by the general plans and specifications. After the material had been ordered and the shop plans had been drawn, the plaintiff in error, on September 8, 1924, attempted to cancel the contract by writing a letter to the defendant in error in which the plaintiff in error stated that:

"It will be necessary for us to cancel our tentative order with you for Walker street viaduct tubes due to conditions with which you are familiar:"

—and on the 10th day of September the plaintiff in error again repudiated the contract and advised the defendant in error that any material he had ordered under the alleged agreement would be at his own risk.

After receiving this letter the defendant in error undertook to stop the shipment of such material as had been made ready for shipment, but the order to stop shipment came too late, with the result that all of the material ordered was delivered to the defendant in error at its foundry in Oklahoma City. It appears that this material consisted of a great number of steel plates of the proper thickness, size, and tensil strength for use in the construction of the steel tubes, which plates were unloaded at the yards of the defendant in error, and remained there until sold, after the filing of this suit, to the highest bidder, at which sale these plates brought the sum of $2,500.03, which sum was taken into consideration in the trial of the case and deducted from the amount claimed by the defendant in error in its petition.

The case was tried before the court and jury, and at the close of all the evidence the plaintiff in error moved for an instructed verdict, which was, by the court, overruled and exception reserved. The jury returned a verdict in favor of the defendant in error, plaintiff in the lower court, for $3,544.60. The plaintiff in error's motion for a new trial was overruled, exceptions saved, and the cause comes regularly on appeal to this court by the plaintiff in error by petition in error and case-made attached. The parties will be referred to as they appeared in the trial court: J. B. Klein Iron & Foundry Company as plaintiff, and the Green-Beekman Construction Company as defendant.

All of the defendant's assignments of error are presented and argued under two propositions, the first of which is that the

defendant in the lower court was entitled to an instructed verdict. The argument in support of this proposition is, as we understand it, that section 29 of the plans and specifications, which provides that "it is understood no work shall be done on material before the working drawings have been finally approved by the engineer, and any work done on material ordered prior to the approval shall be at the contractor's risk," was not observed by the J. B. Klein Iron & Foundry Company, and that when the plaintiff ordered material cut in special sizes and specially designed and fabricated for the Walker street viaduct to the amount of 232,369 pounds, and the said Central Iron & Steel Company immediately cut the steel so ordered by plaintiff in special sizes and specially designed and fabricated, without the said plaintiff having first submitted plans and shop drawings to the engineers, the plaintiff breached and violated the terms, conditions, and provisions of its said contract, and cannot recover damages in this action.

The testimony shows that the dimensions and sizes of material were specified on plans and specifications made by the county and city engineers, a copy of which was given to the plaintiff by the defendant at the date of the execution of this contract for the plaintiff's guidance and use in constructing steel tubes, and that the copy which the defendant furnished the plaintiff for that purpose was an exact copy of the copies on file in the office of the city and county engineers, and that no change had been made therein between the date of the contract and the time of trial. The plaintiff, in other words, contracted to furnish the defendant steel tubes of the dimensions and sizes of material specified in the official plans and specifications; and the testimony further shows that the material ordered by the plaintiff was of the exact size and dimensions as specified in the plans and specifications as provided in the contract.

The testimony shows that after the order was received by the plaintiff, the plans and specifications examined, the dimensions of the tubes and the weight and thickness of the material in their construction ascertained, the plaintiff ordered the material as called for in the plans and specifications. The material arrived, but was not fabricated into the steel tubes for the reason that the defendant company repudiated the contract, and it further appears that after the defendant mailed letters to the plaintiff re-

pudiating the contract the plaintiff stopped fabrication in order to minimize the damage.

The testimony further shows that after receiving the letter of September 10th of the defendant company, repudiating the contract, the plaintiff sought to cancel the order for the material by sending a wire to the Central Iron & Steel Company to stop further shipment of material, but it appears that this attempt failed by reason of being made too late, and all plates were delivered at the yard of the plaintiff and paid for by the plaintiff.

We are unable to find anything in the evidence disclosed by the record to indicate that any failure of the plaintiff to furnish shop drawings had anything to do with the repudiation of the contract by the defendant company. In the two letters sent by the defendant to the plaintiff there is no complaint of the failure to furnish shop drawings.

Furthermore, it appears from the testimony of the county engineer, who was a defense witness, that some time after the 4th day of September, the defendant company, by its president, produced for approval a set of shop drawings prepared by another company, the Virginia Bridge & Iron Company, dated September 4th, four days before the first letter canceling the contract was written, and 19 days after the contract was entered into with the plaintiff for the construction of these tubes, and one day after the shop drawings had been completed by the plaintiff.

The contract involved herein does not specify any specific date for performance; therefore the plaintiff had a reasonable time to perform it. As the contract was repudiated by the defendant before the shop drawings could be submitted either to the defendant or to the county and city engineers, the question as to whether or not shop drawings were prepared by the plaintiff in accordance with said contract becomes immaterial except as it has a bearing on the good faith of the plaintiff in his endeavor to carry out his contract in detail.

The only purpose served by the shop drawings, as testified to by the plaintiff, J. B. Klein, "is merely to show the method of construction to the engineer; the amount of rivets used, * * * and the method of lapping," etc. Whatever may have been the reasons that induced the defendant to repudiate and cancel its contract with the plaintiff, and

to enter into a contract with another company to furnish the steel and tubing as called for in the contract with the plaintiff, it is clear. we think, that the failure of the plaintiff to submit the shop drawings to the engineers had nothing to do with the repudiation of the contract between the plaintiff and defendant.

The jury's verdict involved a finding that at the time the defendant repudiated and canceled the contract, the plaintiff had performed all that was required of him under the contract, in which event the plaintiff would be entitled to such damages as the jury believed he had suffered by reason thereof, not exceeding the amount claimed in the petition.

Under defendant's second proposition it is argued that the entire charge to the jury failed to prescribe a rule whereby the jury could clearly ascertain and fix the measure of damages recoverable, if they found for the plaintiff; and it is urged that the court erred in refusing to give defendant's requested instructions numbered 1, 2, 3, 4, and 5, for the reason that said instructions are a correct statement of the law applicable to the pleadings, issues, and evidence, and present defendant's theory of the case. We are unable to agree with this contention. An examination of the requested instructions shows that they are based mainly upon the contention argued under defendant's first proposition, namely, that the failure of the plaintiff to submit to the city and county engineers for their approval the shop drawings precluded the plaintiff from recovery in the action. The court on this phase of the case instructed the jury that:

"There is no time specified in this contract within which the shop drawings should be furnished. but you are instructed that plaintiff would be required to furnish shop drawings and submit the same to the city and county engineers within a reasonable time. taking into consideration all of the surrounding circumstances, including the specifications under which defendant was constructing the Walker street viaduct, and reference to which is made in the contract. * * *"

In view of all the facts and circumstances disclosed by the record, this instruction was a correct statement of the law applicable to the case.

It is further contended that the plaintiff's whole theory of damage is based upon the false assumption that 232,369 pounds of steel tubes would necessarily be used in the construction of the tubes, and for which plaintiff ordered that amount of steel cut in special sizes, and therefore damaged for use for any other purpose, when as a matter of fact but 154.134 pounds of steel were required to complete the job, as shown by the evidence. We think it sufficient to say with reference to this contention, that the jury in arriving at their verdict based the same upon the amount of tubes actually used in the construction of the viaduct in question. The plaintiff's witnesses testified that 232,-369 pounds of steel was a reasonable estimate of the amount of material necessary to construct these tubes. The defendant's testimony showed that 193,000 pounds was a reasonable estimate of the amount of material necessary to construct the tubes, but the defense testimony further showed that 175,000 pounds of steel was actually used in the construction of tubes for this work; but that on account of unforeseen advantages gained from the fact that the rock was closer to the surface than had been estimated, the amount actually used was 154,134 pounds, and it was upon this latter amount that the jury based their verdict in favor of the plaintiff in the sum of $3,544.60.

We have examined the authorities cited by defendant in its brief, but we are unable to see where these authorities have any application to the issues involved in this case.

We have also examined all of the court's instructions, and when they are considered as a whole, we conclude that the instructions given embody a correct statement of the law applicable to the pleadings, issues, and evidence.

We think the judgment should be affirmed. By the Court: It is so ordered.

Note.—See 35 Cyc. p. 598; anno. 52 L. R. A. 254; 57 L. R. A. 204; 4 L. R. A. (N. S.) 740; 24 R. C. L. p. 117; 5 R. C. L. Supp. p. 1272.