INTERNATIONAL MILLING COMPANY, APPELLANT, V. NORTH PLATTE FLOUR MILLS ET AL., APPELLEES.

FILED JANUARY 30, 1930.   No. 26925.

*H. L. Hoidale* and *William E. Shuman,* for appellant.

*Beeler, Crosby & Baskins, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ., and THOMSEN, District Judge.

EBERLY, J.

This was an action brought in the district court for Lincoln county by the plaintiff, appellant, against the defendants, appellees, to recover damages claimed to have been sustained by reason of the breach of a written contract of sale between the parties dated September 18, 1926. The pleadings disclose that the parties entered into a contract of sale at that time whereby the plaintiff agreed to sell the defendants 1,000 barrels of flour at $7.45 a barrel to be delivered at North Platte "on or before May 1, 1927, on directions to be furnished by the buyer." It is also conceded that the defendants ordered out and received 250 barrels of this flour. However, they failed and neglected to furnish shipping directions for the remaining 750 barrels of flour as required by the contract and thus prevented the performance thereof by the plaintiff, seller. This written contract of sale included an agreement by the parties thereto as to the manner in which the amount of damages suffered, in the event of a breach of the contract by either of them, should be determined. The express terms of this instrument covering this subject are as follows:

"Paragraph 3. As to any of the above wheat flour remaining unshipped by reason of buyer's breach or default, seller shall recover from buyer liquidated damages as follows: (a) A sum equal to 4¢ multiplied by the number of bu. of wheat required to make such unshipped flour, figuring 4¾ bu. to the bbl. of flour; plus (b) a sum equal to 1¢ multiplied by the said number of bu., which sum shall be calculated for each 30 days, or fraction thereof, intervening between date hereof and date of breach; plus (c) amount of decline, if any, per bu., from date hereof to date of breach, in highest closing price, at Mpls., of number 1 Northern Spring wheat, multiplied by said number of bu. In case of a rise in such price of such wheat between said dates, instead of a decline, seller shall recover the sums at (a) and (b), above, less a sum determined by

multiplying amount of such rise, per bu., by said number of bu. such prices on date hereof and date of breach being taken to ascertain amount of decline or rise per bu. Any carrying charges paid by buyer to seller on such wheat flour only shall also be deducted from seller's said recovery. If there is neither rise nor decline in such price seller shall recover the sums at (a) and (b) above, less such carrying charges paid, if any."

"Paragraph 6. But if specifically written on face hereof that buyer shall furnish shipping directions, buyer shall be obligated to notify seller of date, or dates, for shipment, which shall not be later than 'shipping date;' also quantity and (if within style of package, if any specified, is not desired) package, or assortment, wanted, and he shall take out (without previous request) all of within goods as aforesaid, and his failure or refusal so to do shall give seller right, as to any of within goods remaining unshipped by reason thereof, to either: * * * (c) treat contract as broken by buyer and cancel contract (as to such unshipped goods only), at 5 o'clock p. m., Central time on 'shipping date,' and recover, on such unshipped goods, damages as set out in paragraph 3, construing date of such cancelation to be date of breach."

An analysis of the pleadings of the parties herein, and of the record made at the trial in the district court, discloses that the real issue presented in this case is the contention on behalf of the plaintiff, seller, that the provisions of the contract quoted are valid and enforceable as constituting liquidated damages; while the defendants, buyers, in their argument in this court, contend that these provisions amount to and constitute a penalty and as such are unenforceable. The defendants' pleadings, however, present even a narrower issue. Therein they admit the execution of the contract sued on, the continued ability and readiness to perform the same on the part of the plaintiff, the breach thereof by themselves, which they do not attempt to justify, save and except as they deny that damages were occasioned thereby in excess of nominal damages, one cent, which they expressly admit. On this issue the trial

was had in the district court. At the conclusion of the plaintiff's evidence, the defendants, without offering any evidence in support of their contentions, moved for an instructed verdict in their favor. The plaintiff thereupon made a like motion. The court then discharged the jury and entered judgment for the plaintiff, but limited the recovery to nominal damages, viz., one cent. To review this determination the plaintiff now submits the cause to this tribunal.

The record discloses that ample competent evidence was tendered by the plaintiff to support the allegations of the petition and to justify a recovery as prayed, should the legal question involved be determined in its favor. It will be noted that the district court, as a matter of law, expressly held the contractual provisions quoted unenforceable as being a penalty.

The Nebraska "Uniform Sales Act," which is carried in the Compiled Statutes for 1922 as sections 2470 to 2549, inclusive, duly adopted and approved April 25, 1921, is the controlling legislation on this subject. As a valid enactment by our legislature, its terms supersede any conflicting principle in our judicial decisions previously pronounced. It may be said that the original source of this legislation is the "Sale of Goods Act" which was duly adopted by the parliament of Great Britain in the year 1893. The provisions of this act, it may be noted in passing, while containing exceptions and variations, are substantially similar to our present statute on that subject. As a result of this British legislation a movement in the United States toward uniformity of laws relating to commerce, which was national in its scope, resulted in the adoption of uniform sales acts, in terms identical with our own, in the following of our sister states on the dates named: Alaska, January 2, 1914; Arizona, April 1, 1907; Connecticut, July 17, 1907; Idaho, January 1, 1920; Illinois, June 29, 1915; Iowa, April 25, 1919; Maryland, June 1, 1910; Massachusetts, January 1, 1909; Michigan, April 22, 1913; Minnesota, June 1, 1917; Nebraska, April 25, 1921; Nevada, April 1, 1915; New Jersey, May 7, 1907; New York, September 1, 1911;

North Dakota, March 10, 1917; Ohio, January 1, 1909; Oregon, February 22, 1919; Pennsylvania, January 1, 1916; Rhode Island, July 1, 1908; South Dakota, March 3, 1921; Tennessee, July 1, 1919; Utah, June 15, 1917; Vermont, April 1, 1921; Wisconsin, January 1, 1912; Wyoming, February 20, 1917. Our own sales act, passed and approved in 1921, thus adopted an enactment which, in many of its precise terms, had previously been construed by the courts of our sister states. The rule of construction under this situation is, where the legislature reenacts laws of other states, it thereby adopts the judicial constructions which have been placed thereon by the highest courts of such sister states. *Coffield v. State*, 44 Neb. 417; *Forrester v. Kearney Nat. Bank*, 49 Neb. 655; *State v. Cornell*, 54 Neb. 647; *Kendall v. Garneau*, 55 Neb. 403; *Goble v. Simeral*, 67 Neb. 276; *Fadanelli v. National Security Fire Ins. Co.*, 113 Neb. 830. With this principle of construction in view, it may be said that it was determined in New York in 1916 and 1918 that by the New York act on this subject, which is identical with our own: "It was the design as far as possible to make our law uniform with the legislation and laws on this subject existing throughout the country. To this end changes were made in what had been previously here the law." *Rinaldi v. Mohican Co.* (1918) 225 N. Y. 70, affirming (1916) 157 N. Y. Supp. 561. The supreme court of Ohio had likewise determined, with reference to their sales act, identical in terms with our own: The act prescribes rules of law which must govern any case coming within its provisions. *State v. Bayer*, 93 Ohio St. 72. And again with reference to this same act the supreme court of Ohio in 1917 declared: "This is 'an act to establish a law uniform with the laws of other states on sales.' It was passed in response to a general desire for substantial uniformity in the legislation of the different states on all branches of commercial law. It is of high importance that everyone should know his rights and his obligations at all times and all places in connection with every transaction in which he engages. Every law that has been passed in furtherance of that object should have its provisions en-

forced and its principles recognized wholly independent, and to the exclusion, of inconsistent decisions and doctrines previously declared. In this way only can the desired uniformity be sustained." *Sheffield-King Milling Co. v. Domestic Science Baking Co.*, 95 Ohio St. 180. Not only do the requirements of the ordinary rule of construction heretofore announced by this tribunal require that the enactment now under consideration be construed in harmony with the previous decisions rendered by the courts of our sister states prior to its adoption here, but the terms of the act itself disclose that such was the express mandate of the legislature adopting the same, for in section 2543, Comp. St. 1922, we find the following clause: "This act shall be so interpreted and construed, as to effectuate its general purpose to make uniform the laws of those states which enact it."

In substance, all of the terms of the contract of sale here in dispute were before the supreme court of Ohio in the case of *Sheffield-King Milling Co. v. Domestic Science Baking Co., supra.* That court cited as controlling in the case before it sections 8444 (3) and 8451 of their Code, which are identical with sections 2533 (3) and 2540, Comp. St. 1922, which are as follows:

Section 2533 (3): "Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damages of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Section 2540: "Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

The Ohio court in the case last above referred to sustained the contract and a recovery thereunder on behalf of

the seller against a defaulting purchaser, computed in like manner as provided in the contract presented in our instant case. Similar contracts were sustained and like recoveries permitted in the following cases: *International Milling Co. v. Reierson*, 55 S. Dak.—; *Christian Mills v. Berthold Stern Flour Co.*, 247 Ill. App. 1; *Shane Bros. & Wilson Co. v. Striglos*, 228 Ill. App. 397; *New Prague Flouring Mill Co. v. Hewett Grain & Provision Co.*, 226 Mich. 35; *H. H. King Flour Mills Co. v. Bay City Baking Co.*, 240 Mich. 79. It will be further noted that each of the decisions above cited were made in states which had prior thereto adopted the uniform sales act and each were made while that act was in full force and effect and though this legislation may not have been referred to by the judges writing the opinions, still the decided harmony with the principles of the uniform sales act, characterizing the language of these decisions, supports the conclusion that the terms of that legislation must be deemed at least presumptively controlling. But it is also true that in no state having adopted this legislation, so far as we have been able to ascertain, has a recovery on this class of contracts ever been denied. Indeed, if the words of this statute, "This act shall be so interpreted and construed, as to effectuate its general purpose to make uniform the laws of those states which enact it," are to be given their natural force and effect, it would seem that the requirement of a similar construction of our own "Uniform Sales Act" in the present case cannot be avoided.

It is to be noted that the terms of our statute expressly authorize the parties to a sales contract, or agreement to sell, "where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement." It may be said "to vary" means to change to something else. In determining the force and effect of this statute it is to be noted that similar language, when standing alone and applied to other subjects, has been held to justify and authorize almost any change without limitation. *Merchants Loan & Trust Co. v. Northern Trust Co.*, 250 Ill. 86. So far as

we have been able to ascertain, courts in applying this statute to actual transactions have not disclosed any tendency to modify or restrict the natural import of the language thus employed. *Renne v. Volk,* 188 Wis. 508. However, the issues presented in the instant case do not require a definition of the scope of the statutory language under consideration. The pleading of the defendants admits that a situation existed which was created by their default and imposed a liability upon them to respond in damages therefor. The defendants do not affirmatively allege that the provisions of the contract quoted are as a matter of fact "unconscionable." We can give force and effect to the statute referred to only if it be conceded that this liability of defendants, whatever its extent, was subject to be varied by express agreement, and that such agreement existed was pleaded on the part of the plaintiff in its petition and admitted on the part of the defendants in their answer. The defendants' defense to recovery is based upon the rule of damages which existed prior to the adoption of our sales act, but to sustain this contention is to, by construction, invalidate the express terms of the statute which provided that the question of measure of damages was a matter of contract between the parties. The validity of the contract, it will be noted, is unchallenged by the pleadings or otherwise, save and except the assertion of an existing rule of damages which is contrary to the provisions agreed upon by the parties. Indeed, the pleadings in themselves do not advise us whether it is claimed that the provisions of the contract quoted involve a recovery of more or less than would arise in a case where the rule of law contended for by the defendants was applied. In fact, the conclusions of the district court are expressly based on its finding that there is no evidence in the record as to what the damages computed under the rule contended for by the defendants would amount to. This by fair implication denied to the parties to the contract where any right, duty or liability arose thereunder, the right to negative or vary such liability by express agreement. On this subject the Ohio court in 1917, having then under consideration a contract con-

taining provisions similar to the one here presented under the terms of its sales act, employed the following language:

"It must be noted that this contract was not silent on the subject. It contained an 'express agreement' touching the 'liability.' It provides that the basis of settlement shall be 'the actual difference between the highest closing price of No. 1 Northern wheat in Minneapolis on the date of sale and date of cancelation as shown by the "Minneapolis Market Record," figuring four and one-half bushels of wheat for every barrel of flour, the buyer to reimburse the seller for carrying the wheat at the rate of one cent per bushel per month from date of sale to date of cancelation, plus two cents per bushel for buying and reselling the wheat, and two cents per bushel to cover loss of profit, *if any,* and inconvenience to seller resulting from failure of buyer to take out flour as per contract.'

"It is apparent from this language that the parties themselves contemplated that the plaintiff should not be required to speculate upon the price of wheat, whose fluctuating character must have been well known to both, but that the transaction should proceed on the idea that the plaintiff should purchase a sufficient quantity of wheat on the day of sale. Not only this, but it is apparent from the contract that the parties themselves contemplated that this wheat should not be at once manufactured into flour, but should be held or 'carried' until near the time when the plaintiff would be required to manufacture the flour from it. Otherwise the provision as to the highest closing price of No. 1 Northern wheat on the date of sale, and the provision to reimburse the seller for carrying the wheat at one cent per bushel per month and two cents for buying and *reselling* the wheat, would be wholly unnecessary and meaningless. Under the clause, 'and two cents per bushel to cover loss of profit, *if any,*' the plaintiff waived any claim.

"We think that a consideration of the whole instrument forces the conclusion that the contract did not provide for, and the parties did not contemplate, a direct sale of the flour as an ordinary commodity, as it might have done if the parties had so desired; but it provided for, and they

contemplated, the purchase of the wheat at once and the future manufacture and delivery by the plaintiff of the amount of flour within the period covered by the terms of the contract. With these steps in contemplation the parties contracted that defendant should reimburse plaintiff for any loss on account of the purchase of the wheat in case defendant refused to take the flour, or 'fails to furnish directions for shipment.' The parties in this case were fully competent to contract. Each was fully able to consider and provide for his own interest. It is not claimed that there was any fraud or circumvention in connection with the negotiation, and we can conceive of no injustice, or inequity, in the enforcement of the terms of a contract thus made, which contemplated the purchase by the seller of sufficient wheat to supply the commodity to be manufactured and delivered thereafter during a period of a number of months. The parties agreed that wheat, the thing from which the flour was to be made, should be the basis upon which to calculate damages. They could, of course, have agreed that the flour should be such basis, but they did not do so. That was a matter for them to agree about. They did not fix an arbitrary lump sum which might turn out to be wholly inequitable, but fixed a method, the chief element of which was the price of wheat from which the flour was to be made, a matter not within the control of either. In this situation when the plaintiff proved it had performed the terms of the contract on its part, had purchased the necessary wheat, and showed the damages that had accrued on the basis agreed on, it was entitled to recover." *Sheffield-King Milling Co. v. Domestic Science Baking Co.,* 95 Ohio St. 180.

This language is applicable to the proceedings in this case and we adopt it as controlling. In so doing we follow, not only the dictates of reason, but the express commands of our statute which directs uniformity, and the object of it was to secure for everyone the possibility of knowing his rights and obligations at all times and all places in connection with every transaction in which he engages which pertains to or is governed by the "Uniform Sales Law."

We do not overlook the fact that the defendant relies upon the case of *Russell Miller Milling Co. v. Bastasch,* 70 Or. 475. This case, it will be noted, was decided at a time when Oregon had not adopted the "Uniform Sales Act," hence, it could have no application here. It may be said, however, that this case was also considered by the supreme court of Ohio in the case of *Sheffield-King Milling Co. v. Domestic Science Baking Co., supra,* in which that court employed the following language, which we adopt:

"In *Russell Miller Milling Co. v. Bastasch,* 70 Or. 475, relied on by defendant in error, it is held: 'In an action for a breach of contract to purchase flour, a custom of the plaintiff on purchases for future delivery of setting aside a quantity of wheat sufficient to be manufactured into the flour ordered cannot be considered, where the parties are not shown to have contracted with reference to it and no knowledge of it is imputed to the defendants in either pleadings or evidence.' That was an ordinary suit for damages and did not involve the question made here as to liquidated damages or penalty. In the case we have here, it will also be noted, the plaintiff does not assert a 'custom' but an express contract, in which the parties *are* 'shown to have contracted with reference' to the basis of settlement."

It follows therefore that the district court, in denying plaintiff recovery of liquidated damages grounded by the contract in suit, erred. The judgment of the district court is therefore reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.