**CONSOLIDATED FLOUR MILLS CO. v. FILE BROS. WHOLESALE CO.**

No. 1951.

Circuit Court of Appeals, Tenth Circuit.
March 22, 1940.

Austin M. Cowan, of Wichita, Kan. (C. A. McCorkle, W. A. Kahrs, and Robert H. Nelson, all of Wichita, Kan., and Orel Busby, L. H. Harrell, and A. W. Trice, all of Ada, Okl., on the briefs), for appellant.

Robert Wimbish, of Ada, Okl., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The Consolidated Flour Mills Company[1] is a corporation organized and existing under the laws of Kansas. File Brothers Wholesale Company[2] was a copartnership composed of G. L. File and E. L. File. E. L. File died on December 10, 1937. Bessie File is the administratrix of the estate of E. L. File.

On July 21, 1937, at Coalgate, Oklahoma, J. F. Skelton, a salesman for the Flour Company, and E. L. File negotiated a contract for the sale, by the Flour Company to File Brothers, of 2,000 barrels of Kansas Best flour. The contract was signed by

---

[1] Hereinafter referred to as the Flour Company.

[2] Hereinafter referred to as File Brothers.

928

E. L. File and Skelton at Coalgate, Oklahoma. It expressly provided that it was subject to confirmation by the Flour Company at Wichita, Kansas. It was received by Wiley T. Hawkins, sales manager of the Flour Company, on July 21, 1937, at Wichita, Kansas, and was there confirmed by Hawkins, acting for the Flour Company.

The contract stipulated that the flour was to be manufactured. It provided that the Flour Company should deliver the flour f. o. b. carrier at shipping point and prepay or allow the freight to Coalgate, Oklahoma; that the flour was to be shipped on directions of File Brothers to be given on or before March 1, 1938; that File Brothers should pay for the flour on "arrival draft with bill of lading attached"; that "subject to the lien of Seller[3] for the unpaid purchase price, delivery of goods by Seller to the carrier at point of shipment" should "constitute delivery to Buyer";[4] that the flour should be representative of the brand or grade specified and equal to the minimum requirements of the law of the state of Oklahoma; that File Brothers would waive any claim or defense based on the quality of the flour unless it should send to the Flour Company at its main office, within twenty days after receipt thereof, a letter by registered mail specifying the nature of the complaint, and, by express prepaid, a 5-pound sample of the flour alleged to be defective or inferior, and within thirty days after the arrival of the flour, an itemized, verified statement of all loss and damage claimed as a result of alleged defective or inferior flour.

The contract further provided:

"As to any unshipped flour covered by this contract, should Buyer * * *

"(c) Notify Seller that he does not intend to accept any further deliveries under this contract; * * *

"Seller may: * * *

"(2) Terminate the contract as to any unshipped balance, and, for each barrel of flour unshipped, recover from Buyer as liquidated damages a sum to be computed by the following formula:

"(a) One-sixth (⅙¢) cent per barrel per day for each day from date of contract to date of termination; plus

"(b) Twenty (20¢) cents per barrel, as the cost of selling; plus

"(c) Amount of decline, if any, per bushel in the average market price of cash wheat in carload lots at the mill, or basing point (at Seller's option), between date of contract and date of termination, multiplied by four and six-tenths (4.6) times the number of barrels of flour remaining unshipped.

"In case of a rise in such price of such wheat between said dates, Seller shall recover the sums specified in (a) and (b) above, less the amount of such rise per bushel, multiplied by four and six-tenths (4.6) times the number of barrels of flour remaining unshipped. Such rise in such price shall be credited to the amounts provided in (a) and (b) above solely in reduction of damages."

The contract further provided that should File Brothers fail to furnish shipping instructions on or before ten days prior to March 1, 1938, and fail to notify the Flour Company of its intention not to accept further deliveries under the contract, then, unless the Flour Company should elect to terminate the contract, it would be extended automatically from day to day until File Brothers should furnish shipping instructions or notify the Flour Company of its intention not to accept any further deliveries under the contract, and that File Brothers would pay the Flour Company carrying charges at the rate of one-sixth of one cent per barrel of flour per day.

Immediately on receipt of the contract, Hawkins purchased for the Flour Company 9200 bushels of wheat from which to manufacture the flour.

On June 5, 1938, after 315 barrels of flour had been shipped to File Brothers on its direction, G. L. File notified the Flour Company that no more flour would be taken under the contract. Thereupon the Flour Company elected to terminate the contract and brought this action to recover damages for the breach in accordance with the provisions of the contract.

At the close of the evidence, both sides moved for a directed verdict. The trial court discharged the jury, took the case under advisement, and thereafter entered a judgment that the Flour Company take nothing and G. L. File and Bessie File recover their costs. The Flour Company has appealed.

[3] In the contract the Flour Company is called the Seller.

[4] In the contract File Brothers is called the Buyer.

In addition to the facts above stated, the proof adduced by the Flour Company established that the price of wheat per bushel was $1.13 on July 21, 1937, 60 cents on June 6, 1938, and 56.2 cents on July 2, 1938; that in 1938 the cost of selling flour was 21.15 cents per barrel and in 1937 in excess of 20 cents per barrel; that the Flour Company paid a commission to its salesmen of 20 cents per barrel; that the commission was paid as the flour was delivered; that the carrying charges on wheat during the years 1937 and 1938 were not less than one-sixth of one cent per barrel per day; that it had not paid the commission on the undelivered flour but had incurred the selling expenses thereon; that flour was shipped under the contract as follows: 85 barrels on September 16, 1937, 105 barrels on October 6, 1937, 75 barrels on November 2, 1937, and 50 barrels on March 21, 1938; that it required 1449 bushels of wheat to manufacture the flour shipped, leaving on hand 7751 bushels of the wheat purchased to fulfill the contract, and that the market decline on wheat was 53 cents per bushel.

The Flour Company also introduced proof of the damages calculated under the provisions of the contract as follows:

| | |
|---|---|
| Carrying charges on 1685 barrels of flour unshipped at one-sixth cent per barrel per day from July 21, 1937 to June 6, 1938, 318 days | $ 893.05 |
| Cost of selling 1685 barrels of flour at 20 cents per barrel.... | 337.00 |
| Market decline on wheat on hand, purchased to fulfill contract, 53 cents per bushel—$2.438 per barrel on 1685 barrels of flour | 4,108.03 |
| Total | $5,338.08 |

 The trial court erroneously found that the contract was confirmed by the agent who negotiated it and that it was made at Coalgate, Oklahoma, and concluded that §§ 9489 and 9490, O.S.1931, 15 Okl.St. Ann. §§ 214, 215,[5] rendered the provisions therein for liquidated damages void and unenforceable. G. L. File testified that the order for the flour was taken by the Flour Company's salesman, Skelton. The contract on its face shows that it was confirmed by the Flour Company's sales manager, W. T. Hawkins. The contract expressly provided that it was subject to confirmation at Wichita, Kansas, and we think the evidence clearly indicates it was there confirmed. A contract is deemed to be made at the place where the final assent is given.[6] Here, final confirmation was made at Wichita, Kansas, and the contract was therefore made in Kansas.

 The flour was to be manufactured by the Flour Company at its plant at Hutchinson, Kansas, and, under the express terms of the contract, delivery of the flour by the Flour Company to the carrier at the point of shipment was to constitute delivery to File Brothers. It follows that title to the flour would have passed on delivery thereof to the carrier at Hutchinson. The contract was, therefore, to be performed in Kansas, except as to the payment of the drafts for the purchase price.

 The law of the place where the contract is made governs its nature, validity and interpretation unless it appears that the parties, when entering into the contract, intended to be bound by the law of some other place.[7] We must, therefore, look to the law of Kansas to determine the validity of the contract provision for liquidated damages.

 Kansas has adopted the modern rule with respect to provisions for liquidated damages, which is to look with candor, if not with favor, upon such provisions in contracts when deliberately en-

---

[5] Sections 9489 and 9490 read as follows:

"Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by the next section."

"A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

[6] Denison v. Phipps, 87 Okl. 299, 211 P. 83, 85; Consolidated Fuel Co. v. Gunn, 89 Okl. 73, 213 P. 750, 751; Clem Oil Co. v. Oliver, 106 Okl. 22, 232 P. 942, 943.

[7] Federal Surety Co. v. Minneapolis S. & M. Co., 8 Cir., 17 F.2d 242, 245; Brown v. Ford Motor Co., 10 Cir., 48 F.2d 732; Clark v. First National Bank, 59 Okl. 2, 157 P. 96.

tered into between parties who have equality of opportunity for understanding and insisting upon their rights, and to give effect to such provisions in accordance with the intention of the parties where the damages are uncertain in nature or amount, or are difficult of ascertainment, and the amount stipulated does not manifestly exceed the injury which will be suffered.[8] Provisions for liquidated damages substantially like those provided in the contract in the instant case have been sustained in many adjudicated cases.[9]

The contract here called for a special brand of flour to be manufactured by the Flour Company and to be delivered in the future. Deliveries were to be made at File Brothers' option as to time within a period of approximately seven months. The price of wheat is subject to great fluctuation. A miller who contracts for the manufacture and future delivery of flour at a stipulated price must immediately purchase the wheat from which to manufacture the flour in order to protect himself against fluctuations in the market price of wheat. He must carry the wheat until the flour is ordered out and thereby incurs a carrying charge. There is no open market for flour. A market for flour must be searched for and salesmen are employed for that purpose. In maintaining a plant for the manufacture of flour for future delivery the miller incurs overhead expenses. He also incurs a selling expense. It follows from these considerations that the damages for breach of a contract to manufacture and deliver flour at the buyer's option within a substantial period are uncertain and difficult of ascertainment. The proof adduced showed that the damages were not disproportionate to the injury suffered by the Flour Company. We conclude that the provisions are valid under Kansas law.

We think they are equally valid under Oklahoma law. The trial court relied upon Kansas Flour Mills Co. v. Ballard, 120 Okl. 162, 250 P. 1006, Consolidated Flour Mills Co. v. Wright, 131 Okl. 22, 267 P. 464, and Home Bakery of Carnegie v. Robinson Milling Co., 170 Okl. 349, 40 P.2d 637, involving contracts for the sale of flour, where the court held the damages suffered were susceptible of proof and were governed by the ordinary rule that the damages recoverable against a purchaser for failure to receive and pay for personal property contracted for is the difference between the contract price and the reasonable market value of the property at the time of the breach. But none of those cases involves a contract for flour of a particular brand to be manufactured for the purchaser and to be delivered in the future at the purchaser's option as to time within a substantial period. They are, therefore, clearly distinguishable from the instant case.

In Green-Beekman Const. Co. v. Klein, 124 Okl. 157, 254 P. 699, in an action for breach of contract for the sale of articles to be manufactured, where it appeared that the seller had purchased the materials from which to manufacture the articles, the court held the measure of damages was the difference between what the seller was able to sell such materials for to other parties and the contract price of the manufactured articles.

The Supreme Court of Oklahoma has sustained provisions for liquidated damages where the damages which may result from the breach of the contract are in their nature uncertain and cannot be measured with any degree of accuracy and the amount

---

[8] Illinois Trust & Savings Bank v. City of Burlington, 79 Kan. 797, 101 P. 649, 652; Glascock v. Stamey, 130 Kan. 579, 288 P. 579; Henshaw v. Smith, 102 Kan. 599, 171 P. 616, 617; St. Louis & S. F. R. Co. v. Gaba, 78 Kan. 432, 97 P. 435, 437.

See, also, Burns Trading Co. v. Welborn, 10 Cir., 81 F.2d 691, 694, 695, 106 A.L.R. 285, certiorari denied 298 U.S. 672, 56 S.Ct. 936, 80 L.Ed. 1394; Wise v. United States, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647.

[9] Larabee Flour Mills Co. v. Carignano, 10 Cir., 49 F.2d 151, 154, 155; Quaile & Co. v. William Kelly Milling Co., 184 Ark. 717, 43 S.W.2d 369, 371, 372, 79 A.L.R. 183; Standard Tilton Milling Co. v. Toole, 223 Ala. 450, 137 So. 13, 15; Christian Mills v. Berthold Stern Flour Co., 247 Ill.App. 1; H. H. King Flour Mills Co. v. Bay City Baking Co., 240 Mich. 79, 214 N.W. 973, 975; Yerxa, Andrews & Thurston v. Randazzo Macaroni Mfg. Co., 315 Mo. 927, 288 S.W. 20, 33–35; International Milling Co. v. North Platte Flour Mills, 119 Neb. 325, 229 N.W. 22, 24; Sheffield-King Milling Co. v. Domestic Science Baking Co., 95 Ohio St. 180, 115 N.E. 1014, 1016, 1017; International Milling Co. v. Reierson, 55 S.D. 139, 225 N.W. 218, 221, 222; Note, 79 A.L.R. 188.

provided is not manifestly disproportionate to the actual injury suffered.[10]

In the recent case of Southern Motor Supply Co. v. Shelburne Motor Co., 172 Okl. 495, 46 P.2d 562, the court quotes with approval from Larabee Flour Mills Co. v. Carignano, 10 Cir., 49 F.2d 151, 154,[11] United States v. Bethlehem Steel Co., 205 U.S. 105, 119, 27 S.Ct. 450, 51 L.Ed. 731, and Wise v. United States, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647, and adopts the modern rule announced in those cases with respect to enforcement of provisions for liquidated damages.

We conclude that the Flour Company was entitled to recover damages in accordance with the stipulations of the contract.

G. L. File alleged and undertook to prove a breach of the warranty provision of the contract but wholly failed to establish compliance with the provisions of the contract requiring File Brothers to forward to the Flour Company a letter specifying the nature of the complaint, a sample of the goods alleged to be defective or inferior, and an itemized, verified statement of all loss and damage claimed.

The proof shows that Bessie File did not enter into the partnership or participate in its conduct after the death of her husband, E. L. File. Sec. 11661, O.S.1931, 54 Okl.St. Ann. § 54, in part provides that "on the death of a partner, the surviving partners succeed to all the partnership property, whether real or personal, in trust for the purpose of liquidation." Sec. 11647, O.S. 1931, 54 Okl.St.Ann. § 40, provides that "every general partner is liable to third persons for all the obligations of the partnership, jointly with his co-partners."

The death of E. L. File dissolved the partnership and the action was maintainable only against G. L. File individually and as the liquidating trustee of the partnership assets. See White & Smith v. Dillinger, 50 Okl. 555, 151 P. 194; Walker Drilling Co. v. Carlew Drilling Contractors, 109 Okl. 7, 9, 234 P. 598, 600. Bessie File was not liable, either individually or as a member of the partnership.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of the Flour Company and against G. L. File as liquidating trustee of the partnership assets and individually in accordance with the provisions of the contract.

[10] Southern Motor Supply Co. v. Shelburne Motor Co., 172 Okl. 495, 46 P.2d 562; Mattes v. Baird, 176 Okl. 282, 55 P.2d 48, 51–52; Lorraine Petroleum Co. v. Bartlett, 138 Okl. 8, 280 P. 286, 289; Board of Education v. Broadwell, 117 Okl. 1, 245 P. 60, 62; Beaty v. Armstrong, 95 Okl. 109, 218 P. 516, 517; Garr v. Minnick, 100 Okl. 109, 228 P. 481, 483; McAlester v. Williams, 77 Okl. 65, 186 P. 461, 463, 464.

[11] In the Larabee Flour Mills case, the court held that a provision for liquidated damages substantially like the one in the contract in the instant case was valid under §§ 9489 and 9490, supra.