**BEATY et al. v. ARMSTRONG.**

No. 14154—Opinion Filed July 17, 1923.

Rehearing Denied Sept. 18, 1923.

(Syllabus.)

**1. Damages — Liquidated Damages—Validity of Contract for Sale of Oil Royalty.**

A well being drilled close to the line of plaintiff's land, with good prospects for a paying oil well, plaintiff, though having opportunities to sell his royalty interests to other buyers for a good price, sells to defendant under a mutual written contract that defendant shall deposit $1,000 of the purchase price to plaintiff's credit in the bank, same to be paid to plaintiff in the event of defendant's default in payment of balance due before the well is completed, it appearing that the object of such provision is to secure plaintiff against damage through loss of opportunities to sell to other buyers, should the well not prove to be a paying one. Held, such provisions for forfeiture of the $1,000 to plaintiff is for liquidated damages and is not in the nature of a penalty, and is therefore enforceable.

**2. Banks and Banking — Deposits Under Contract—Liability of Bank—Estoppel.**

Where a contract witnesses that $1,000 has been placed to plaintiff's credit in the bank, the contract containing the further provisions that the bank shall pay the $1,000 to plaintiff in the event of defendant's fail-

ure to comply with the contract, and where plaintiff refuses to execute such contract until assured by the bank that the $1,000 is actually on deposit, and is led by the bank to believe that the money is actually on deposit, and where plaintiff refuses to accept a deposited draft in lieu of the money, but upon assurance by the bank that the money is actually on deposit, thereupon executes his part of the contract. Held, the bank, under such circumstances, is not acting in the capacity of a mere agent for the collection of a draft and is liable to plaintiff for the amount of such deposit.

**3. Appeal and Error—Discretionary Rulings —Amendment of Pleadings.**

A liberal latitude of discretion is allowed trial courts in permitting amendments, but in the exercise of such discretion, courts are limited by reason, taking into consideration the substantial rights of litigants in order that justice may be done. This principle applies to both parties to litigation, and if the party seeking to amend be chargeable with laches, and it appear that the substantial rights of the opposing party would suffer by the delay caused by the proposed amendment, this court will not disturb the ruling of the trial court in such case, unless a clear abuse of discretion is presented.

Error from District Court, Pawnee County; W. B. Williams, Judge.

Action by James Armstrong against J. H. Beaty and the Guaranty State Bank of Hallett to recover amount of deposit. Judgment for plaintiff, and defendants bring error. Affirmed.

Simons, McKnight & Simons, for plaintiff in error J. H. Beaty.

Thurman S. Hurst and L. N. Kimrey, for plaintiff in error Guaranty State Bank.

McCollum & McCollum, for defendant in error.

HARRISON, J. This was an action to recover $1,000 which was supposed to have been deposited in defendant bank under a written agreement, which, in substance, recited: That J. H. Beaty, through his agent, O. D. Bryan, had purchased of James Armstrong an undivided one-half interest in the oil royalty from a 160-acre tract of land for $20,000. That $1,000 of the purchase price had been deposited in the Guaranty State Bank to the credit of Armstrong; that deed from Armstrong to Beaty had been forwarded by the bank to Beaty, with draft attached for the balance of the purchase price of $19,000; that if Beaty refused to accept the deed and to pay the $19,000 draft, then the $1,000 on deposit should be paid to Armstrong; that the Guaranty State Bank was

directed to turn over the $1,000 to Armstrong in case the $19,000 draft was not paid.

It came to pass that Beaty refused to pay the $19,000 balance, and thereupon Armstrong demanded payment of the $1,000 supposed to be on deposit; the bank refused to pay same to Armstrong, and Armstrong brought suit against Beaty and the bank for recovery of same and obtained a verdict and judgment against them for $1,000, with interest at 6 per cent. per annum. Both Beaty and the bank join in this appeal presenting four propositions for reversal.

The first proposition is:

"This is an action to enforce a forfeiture, which the courts of this state will not enforce."

Plaintiff in error quotes sections 5067, 5068, and 5069, Comp. Stats. 1921, and section 5983, Id., and cites an extensive list of authorities in support of the contention that the deposit being in the nature of a penalty and not that of liquidated damages, the courts will not enforce it as a penalty. But the circumstances of this case were that a well was being drilled close to the line of Armstrong's land with fine prospects for a paying oil well; that buyers were anxious to purchase Armstrong's royalty interest; that he had other opportunities to dispose of his royalty interest for a good price; and that in order to secure himself against damage by loss of chance to sell to other buyers, in the event the well should not be a paying well, he had it provided in the contract with Beaty that $1,000 of the purchase price should be deposited in advance, and that in the event Beaty failed to carry out the contract on his part, the $1,000 should be paid to him, Armstrong, so that he would be secured against damage by loss of opportunity to sell to other buyers.

These circumstances bring the contract in this case within the principles announced in McAlester v. Williams, 77 Okla. 65, 186 Pac. 461, under which the contract in this case is interpreted to provide for liquidated damages and not for a penalty.

The trial court seems to have so interpreted the contract, and we think correctly so

The second proposition is that the Guaranty State Bank, being only an agent for the collection of the draft for $1,000, was liable in no event except for negligence in collection, and in no event liable as guarantor of payment. The contention that the bank was only an agent for the collection

of the $1,000 draft is not sustained by the record. It is apparent from the record that Armstrong refused to accept a draft, but insisted that the $1,000 be actually on deposit in the bank before he would sign the deed to Beaty with the draft attached for the balance of the purchase money; that he refused to do so until led to believe that the money was actually on deposit, and that he was led to believe so by the statements of the bank alone. Armstrong alleged that the bank had informed him that the money was on deposit and he and his son both testified that when they went into the bank, the president of the bank said "Jim, your money is up", and that thereupon he performed his part of the contract, believing the money to be in fact on deposit. It developed at the trial, however, that the money had never been deposited: that Armstrong had been deceived; that instead of the money being on deposit to Armstrong's credit, as he had been led to believe was true, a draft had been drawn on Beaty for the $1,000, which draft had been turned down by the bank upon which it was drawn. This fact was not made known to Armstrong until after the $19,000 draft had been returned unpaid, and Armstrong had demanded his $1,000. So much delay had been caused by one means or another, that in the meantime the well which was being bored had been finished and proved to be worthless, thereby destroying Armstrong's opportunity to sell his royalty rights to other buyers. This delay, whether willful or not, was as much contributed to by the bank as by Beaty, and whether willful or not, had the same effect as though it had been the joint purpose of Beaty and the bank to delay payment of the $19,000 until it could be seen what the well would prove to be. If it proved to be a paying well, then to hold Armstrong to his contract, but if it proved to be a failure, then Beaty could avoid the contract by permitting the $19,000 draft to be dishonored, and then deprive Armstrong of the $1,000 by permitting the draft for that amount to be dishonored. But, whether such be true or not, it is apparent from the record that Armstrong would not have entered into the contract with Beaty but for the belief that the $1,000 was actually on deposit to his credit in the Guaranty State Bank, and that he was led to such belief by the bank itself. Under these circumstances, the bank was not a mere collection agent, but was a party to the deception, if there was a deception, and if there was, then the bank was equally liable with Beaty.

It appears from the record that plaintiff Armstrong's petition was verified, that

Beaty's answer was not verified, and that the trial court refused to permit him to verify it, which ruling is assigned as error.

Under our statutes and the decisions of this court, a liberal latitude of discretion is allowed trial courts in permitting amendments, which discretion must in all cases be limited by reason, taking into consideration the substantial rights of litigants in order that justice may be done. This, however, applies to both parties to litigation, and it is the duty of the court in such case to take into consideration the substantial rights of both parties, and if one party be found chargeable with laches in the amendment or verification of pleadings, and it appear that the substantial rights of the other party would suffer by the delay caused by an amendment, this court will not disturb the ruling of the trial court in such case, unless a clear abuse of discretion is presented. The present case does not present such abuse of discretion as to justify a reversal.

Finding no substantial error, the judgment is affirmed.

JOHNSON, C. J., and KENNAMER, COCHRAN, and BRANSON, JJ.. concur.