## STAFFORD v. McDOUGAL.

No. 22488. March 12, 1935.

Everett Petry and Carl H. Ravis, for plaintiff in error.

W. V. Pryor, C. B. Rockwood, and Tom Wallace, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the court below. Plaintiff instituted his action by peti-

tion filed in the district court of Creek county on March 14, 1929, wherein he sought to recover from defendant the sum of $12,-150, with interest thereon at 8 per cent. per annum from June 13, 1928, and $1,250 attorneys' fees. The action was based upon the negotiable promissory note of defendant for the principal sum of $12,500, dated October 6, 1925, and due on or before two years after date, upon which interest had been paid to June 13, 1928, at which time a payment of $350 on the principal was also paid. The defendant, on June 7, 1929, filed his answer and cross-petition, and thereafter, and on November 18, 1929, his amended answer and cross-petition, whereby he alleged that on the 6th day of October, 1925, the plaintiff sold to defendant a certain residence property in Bryan Park addition to the city of Miami, Fla.; that the consideration of said premises was $65,-000; that the principal value of said premises was the house thereon, if the same had been as represented by the plaintiff to the defendant; that the note sued upon by plaintiff represented part of the consideration; that the primary and moving inducement for the agreement of defendant to purchase the said premises was the representations to the defendant by plaintiff that the house situated thereon was constructed of the very best materials; that all the materials used in the construction of the house were first class materials, and the carpenter work and other workmanship done in the construction of the house were first class; that, at the time of said transaction, the defendant did not know and had no means of knowing whether the statements made by plaintiff as to the condition of the property were true or false; that the defendant had discovered within the six months immediately preceding the filing of the amended answer and cross-petition, that said house was constructed out of inferior and insubstantial materials; that such discovery was made after the paint and finishing became removed by wear and by the weather, and by the opening and closing of windows; that the window frames had broken to pieces, and that the wood used in the construction of the windows and window frames is rotten; that the roofing on said building was constructed of inferior and rotten material and is in bad condition, allowing rain to leak through and damage and disfigure the walls of the house; that the plumbing is in bad condition, causing defendant to have to pay excessive water bills; that plaintiff was a contractor by trade and his business that of building and constructing houses for sale; that he represented to defendant that he personally supervised the construction of said building, and that the materials used therein were the best that could be purchased on the market, when in truth and in fact the materials were rotten and of very inferior grade, which fact was known to plaintiff at the time of the sale thereof by him to defendant, and that defendant relied solely upon the representations of plaintiff and would not have made the purchase of said property had the plaintiff not so represented to defendant the condition of said premises; that said defects could not have been ascertained by mere inspection of the property, but were hidden defects and known solely to the plaintiff, and not disclosed to the defendant; that said false and fraudulent representations were knowingly made by plaintiff to the defendant, with the intent on the part of the plaintiff that they should be acted upon by the defendant, and they were acted upon by the defendant, relying on the truth of such statements and representations. Defendant further pleaded payments on the consideration of $65,000, to be paid for said property, part of which payments were alleged to have been in cash, and part by the conveyance and delivery of certain real estate and personal property made by defendant to plaintiff. Defendant asked that the whole transaction and contract of purchase between the parties, made on October 6, 1925, be rescinded; that he have judgment against the plaintiff for $21,-393.22, and further judgment ordering the plaintiff to execute proper conveyance to the defendant for the property conveyed by defendant to plaintiff, or in the event plaintiff was unable to reconvey said property, that defendant have judgment against the plaintiff for the value thereof, and tendering to plaintiff the reconveyance of the property purchased by defendant from plaintiff.

The case was tried to a jury, which returned its verdict in favor of the plaintiff for the amount sued for. Thereafter and within the time allowed by law, the defendant filed his motion for new trial, in which he urged three grounds, namely:

"(1) That the verdict of the jury was contrary to the law and the evidence and not supported by the evidence.

"(2) That the court erred in its instruction to the jury.

108

"(3) For error occurring at the trial prejudicial to the defendant and excepted to by him."

Defendant also filed his motion for judgment after the verdict of the jury, on the ground that there was no dispute as to the execution of the note and no dispute as to the amount due thereon, and that the action was purely a case in equity for the cancellation of a contract entered into, and for the cancellation of conveyance of certain property in pursuance of said contract, on the ground of fraud practised on defendant by the plaintiff, asking the trial court to review and consider the pleadings, issues and the evidence, and render judgment for the defendant independent of the verdict of the jury. Pending the motion for new trial and motion of defendant for judgment, the trial court rendered judgment on the verdict of the jury in favor of the plaintiff for the amount sued for. Thereafter, there were filed in said cause the affidavits of three of the jurors who participated in the trial, to the effect that the only question that was submitted to the jury was one of rescission of a contract involving approximately $65,000, and no question of damages submitted to the jury, and that the jury considered that the only possible verdict they could render, under the instructions of the court, was the verdict that they did render; that affiant and other jurors were of the opinion that defendant was damaged by reason of inferior material and inferior workmanship, and had the question of damages been submitted to the jury, the jury would have found that defendant was not indebted to the plaintiff in any sum; thereafter, and more than a year after the trial of said cause, defendant filed his amended motion for new trial on the ground of newly discovered evidence. This motion was not verified. On December 29, 1930, motion for new trial was sustained by the court, and the verdict and judgment theretofore rendered in the cause set aside and a new trial granted. It is from this order granting a new trial to the defendant, that this appeal is prosecuted.

The view we take of the case requires consideration of all the evidence. In its most favorable light to defendant, together with all the inferences that can be properly drawn from it, the evidence shows that plaintiff sold to the defendant a dwelling house at an agreed price of $65,000, telling the defendant that it was constructed of good material and workmanship; that defendant went into possession of the property and occupied it for about four years, making payments from time to time by cash and by conveyances of other properties; that after about three years, he discovered a small leak in the roof that did no substantial damage to the building, and which he repaired for $24; that he had noticed one leak in the roof in June, 1928, and that after that time, and as late as February 28, 1929, he made further payments to plaintiff on the contract; that the roof was a four-ply built-up asphalt roof, but had never been treated or repaired by the defendant, except the repairs mentioned; that after the suit was filed, a lock on one of the doors got out of repair and defendant had to have a carpenter put on a new lock at a cost of $6 or $7; that the plumbing had been leaking and defendant had not been able to locate the leak, resulting in a substantially increased water bill; that subsequent to the filing of the suit, defendant found the bottom of a window sash decayed, and that there were at the time of trial one or two of the other window sashes in bad condition; that the window sashes were exposed to the weather, without repainting; that the concrete work on the driveway was crumbling and the inside finish on one of the porch walls of the house crumbling. The extent of the crumbling of concrete on the driveway and inside finish on porch wall, or time of discovery thereof, does not appear; that defendant's total expenditure for upkeep and maintenance of the property for more than four years did not exceed $75; that defendant made no contention of fraud in the inception of the contract until after suit was filed by plaintiff. There is no evidence that plaintiff had actual knowledge of any defect in the material or workmanship used in the construction of the house. There was evidence on the part of the plaintiff that the roof, window sashes, hardware and other material used in the construction of the house were of standard material, made by reputable manufacturers, and that the workmanship used in the construction of the house was first class, and that by reason of climatic conditions in Florida, it was necessary, for the proper preservation of the buildings and woodwork against decay, to paint the woodwork once every two years; that the door lock, which had to be replaced, was of solid brass, the most expensive lock to be found in Miami; that it cost approximately $20; that the plumbing was not installed by plaintiff, but by a plumbing contractor, and

the plumbing approved by the official plumbing inspector of the city of Miami, Fla. The evidence discloses that Miami, Fla., was visited by a hurricane in 1926, which did considerable damage to the house in controversy; that several windows were broken, permitting salt water from the gulf, with which the air was saturated, to enter the house.

No evidence was introduced by the defendant that the material and workmanship used in the construction of the house were in fact inferior or faulty at the time of its construction, other than that above referred to, and the question is whether such evidence is sufficient to warrant the inference that such material and workmanship were faulty and inferior at the time of the construction of the house, and that such facts were known to plaintiff at the time the house was purchased by defendant.

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised, except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them." Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112.

"Fraud is a fact to be established by evidence, as any other fact. The general rule is that before fraud can be established, it must be shown that a material representation has been made; that it was false; that when it was made the speaker knew it was untrue, or that it was made recklessly, without the knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the one to whom it was made; that it was so acted upon by reason of the reliance placed upon it; and that damage or injury resulted thereby." Oklahoma Petroleum & Gasoline Co. v. Winship, 83 Okla. 146, 200 P. 844; McAllister v. Ealy, 98 Okla. 223, 225 P. 146; Wheeler & Motter Mercantile Co. v. Green, 97 Okla. 96, 222 P. 965; Tyer v. Caldwell, 114 Okla. 13, 242 P. 760; Johnson v. Valleau, 110 Okla. 137, 236 P. 871; Porter v. Rott, 116 Okla. 3. 243 P. 160.

"Fraud is never presumed, but it must be affirmatively alleged and proven by the party who relies on it, and cannot be inferred from facts which may be consistent with honesty of purpose." Smith v. Stricker Radio & Music Shoppe, 123 Okla. 95, 251 P. 1015; Oliver v. Collins, 123 Okla. 33, 251 P. 729; Sapulpa Refining Co. v. Sivals, 92 Okla. 159, 218 P. 830; McAllister v. Ealy, 98 Okla. 223, 225 P. 146.

The affidavit of jurors filed in the case after the trial, to the effect that had the case been submitted to them on the question of damages resulting to defendant by reason of defective condition of the house, the jury would probably have found that defendant was damaged in the transaction in an amount equal to the amount sued for by plaintiff, is of no avail to defendant. The defendant's theory of the case was that he was entitled to rescind the contract on the ground of fraud by the plaintiff; his pleadings were based upon that theory. In his cross-petition, he asked for judgment rescinding the whole transaction and contract; for judgment against the plaintiff for the amount of money theretofore paid under the contract by defendant to plaintiff, in the sum of $21,893.22, and for judgment ordering the plaintiff to execute proper conveyances to the defendant for property theretofore conveyed by defendant to plaintiff under the contract. During the trial of the case, the defendant's counsel stated, in objecting to testimony offered by plaintiff, "We are suing for rescission of the contract; we are not suing for the difference in the value of the building, or the building materials that were decayed." On this objection, the court sustained an offer of the plaintiff of testimony as to the amount of depreciation of the value of the building, had the material complained of by defendant actually been faulty at the time the building was sold. In his motion for judgment independent of the verdict, defendant alleged that the case was purely a case in equity for the cancellation of the contract entered into, and for the cancellation of conveyances of certain property, in pursuance of said contract, on the grounds of fraud practised on the defendant by the plaintiff.

The rule is well established that a party may not affirm a contract and sue for breach, and at the same time disaffirm and rescind, and recover the consideration paid. After having once definitely elected his remedy, he is bound thereby, and will not be allowed to speculate on the verdict, and, if unsuccessful, repudiate his election. Any decisive act of a party, with knowledge of his rights and of the facts, indicating intent to pursue one remedy, rather than the other, determines his election. To the proper application of this rule, at least three things are essential: (1) There must be in fact two or more existing remedies be-

110

tween which the party has the right to elect. (2) The remedies open to him must be inconsistent. (3) He must, by actually bringing his action, or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies. Any unambiguous act, consistent with one and inconsistent with others, will be deemed conclusive evidence of an election. Wesley v. Diamond, 26 Okla. 170, 109 P. 524; Freeland et al. v. Dolen, 84 Okla. 286, 203 P. 182.

In the Kansas case of Baltimore American Insurance Co. v. Zimmerman et al., 272 P. 165, the court said:

"Where a party to an action seeks to rescind a contract on the ground of fraud practised on him by another party to the action, tenders to him all that had been received from him under the contract, asks for the recovery of what had been given, and, at a trial before a jury which failed to agree, elects to stand upon his cause of action for rescission, he cannot thereafter abandon his action for rescission and set up one for damages on account of the fraud."

In the case just cited, the party is held to his election, notwithstanding the fact that the jury failed to agree. In the case here, the verdict of the jury was against the defendant, making a stronger case of election than the case last cited.

The plaintiff was entitled to recover unless the affirmative defense pleaded by defendant was sustained. Duncan v. First National Bank of Healdton, 122 Okla. 58, 251 P. 69; Union National Bank of Okmulgee v. Jones, 152 Okla. 211, 4 P. (2d) 62.

It is a well-established rule in this jurisdiction that a motion for new trial is addressed to the sound discretion of the trial judge, and unless it is shown that there was an abuse of discretion, the order granting the new trial will not be disturbed, and unless it appears that the court has erred in the decision of some clear and unmixed question of law, and that the order granting the new trial is based on such erroneous view of the law, the action of the trial court should be affirmed. There is nothing in the record to show upon what ground the court granted a new trial, but, under the record in this case, as we view it, the only possible ground upon which a new trial could have been granted by the trial court was that the verdict and judgment in favor of the plaintiff was clearly against the weight of the evidence.

We agree with the contention of defendant that by his answer and cross-petition, whereby he sought to rescind the contract and to recover from plaintiff all that he had paid him under the contract, which relief, if granted, would cut out the foundation on which the plaintiff relied to recover and therefore destroy plaintiff's case, he converted the case into one in equity. Mathews v. Sniggs, 75 Okla. 108, 182 P. 703. The verdict of the jury in such case is only advisory to the court. In this case, the court rendered judgment on the verdict of the jury, thereby adopting its verdict as the judgment of the court. A careful consideration of the evidence leads us to the opinion that the evidence offered by defendant in support of his action for rescission, measured by the rules above set forth, was wholly insufficient to justify a court of equity in rendering a judgment rescinding and canceling the contract between the parties, and that a judgment in the case in favor of the defendant would have been clearly against the weight of the evidence, and would have required a reversal in this court for that reason.

In the case of Chicago, R. I. & P. Ry. Co. v. Zobisch, 118 Okla. 193, 247 P. 351, the trial court sustained a demurrer to plaintiff's evidence, and thereafter granted the plaintiff a new trial. This court, on appeal from the order granting a new trial, reversed the case, using the following language:

"In a case for negligent handling of a shipment of hogs, alleged to have resulted in the death of four of them, where there is no affirmative evidence of negligence, and the trial court sustains a demurrer to plaintiff's evidence at the conclusion thereof, the action of the trial court thereafter in granting plaintiff a new trial is erroneous as a matter of law."

In that case, which was a law action, there being no evidence reasonably tending to support a verdict of the jury for the plaintiff, in case one had been rendered, this court held that the granting of a new trial constituted an error as a matter of law. In an action at law, this court will not reverse on the ground of insufficient evidence, if there is any evidence reasonably tending to support the verdict of the jury. In an equitable action, the court will consider all the evidence, and if the judgment rendered by the trial court is clearly against the weight of the evidence, the case will be reversed. The precise question here involved does not seem to have been passed

upon by this court, but we cannot escape the conclusion that, where the evidence offered in a case in equity is so meager and unsatisfactory that a judgment in favor of the party offering such evidence would be clearly against the weight of the evidence, and a new trial is not warranted on the ground of newly discovered evidence, the action of the trial court thereafter in granting such party a new trial is erroneous as a matter of law.

In our judgment, the defendant had a fair trial and full opportunity to present his case. This court is slow to disturb the judgment of a court granting a new trial, but defendant is not entitled to more than one fair reasonable opportunity to establish his defense.

The amended motion of defendant for a new trial, on the ground of newly discovered evidence, cannot be considered for the reason that the same was not verified. Dodson & Williams v. Parsons, 62 Okla. 298, 162 P. 1090; Wachtstetter v. Challinor, 114 Okla. 119, 244 P. 194.

Under the record in this case, the granting of a new trial was error, and for that reason the cause is reversed and remanded to the trial court, with directions to set aside its order granting a new trial, and to let the judgment in favor of plaintiff stand.

The Supreme Court acknowledges the aid of Attorneys John E. Luttrell, Sylvester Grimes, and Richard T. Pendleton in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Luttrell, and approved by Mr. Grimes and Mr. Pendleton, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and WELCH, CORN, and GIBSON, JJ., concur.