## COOKE v. TOWNLEY.

No. 34265.

Supreme Court of Oklahoma.

Nov. 6, 1951.

Dissenting Opinions Jan. 29, 1952
and Jan. 27, 1954.

Rehearing Denied Jan. 27, 1954.

Edward M. Box, Oklahoma City, for plaintiff in error.

Twyford, Smith & Crowe, Oklahoma City, for defendant in error.

PER CURIAM.

The plaintiff in error was the defendant in the trial court and defendant in error was plaintiff and hereafter they will be referred to as they there appeared.

The plaintiff commenced this replevin action in the district court of Oklahoma County, Oklahoma, wherein he sought to replevy certain described livestock and to recover judgment on two notes, one for $2,400, bearing 6% interest from the 6th day of June, 1947, and ten percent attorneys' fees, and one for $3,950, bearing 6% interest from September 12, 1947, and ten percent attorneys' fees.

A Writ of Replevin describing certain cattle was served on the defendants, Lee McNutt and C. C. Cooke, January 23, 1948, and returned by the sheriff of Oklahoma County, Oklahoma with the notation, "I also went to the place where the within described cows are supposed to be kept, where I found approximately 60 head of cows but could not identify them as the cows described in this Writ, and the same cows as described in this Writ were not delivered to the plaintiff herein, (Signed) Dick Strain, Sheriff, by J. W. Brown, Deputy Sheriff."

C. C. Cooke filed a separate answer to plaintiff's first and second causes of action, alleging payment of said notes and denying that any cattle covered by any mortgages held by the plaintiff had come into his possession by virtue of any transaction with the defendant Lee McNutt. He alleged that the chattel mortgage purportedly given to secure payment of the note of September 12, 1947, was not filed for record until January 3, 1948, and that if the court should find and determine that any cattle that came into the possession of C. C. Cooke were in fact cattle covered by the mortgage which was filed for record January 3, 1948, that in that event, such cattle were purchased by Cooke in good faith, without notice, and prior to January 3, 1948, when said mortgage was filed for record and that the title of the defendant Cooke was therefore superior to any right, title or interest, if any, which the plaintiff might have in said cattle.

Defendant asked that the court require an accounting between the plaintiff, S. E. Townley, and the defendant, Lee McNutt, and for all other proper relief.

Defendant Cooke also filed a cross petition against plaintiff S. E. Townley seeking judgment for $1,930.65, moneys alleged to be due from Townley to Cooke.

The plaintiff filed a reply and answer in the nature of a general denial and an amendment to his petition. Upon these issues, trial was had to a jury which returned a verdict fixing plaintiff's recovery on his petition at $5,447.95, and a verdict for the defendant Cooke on his cross petition for $1,028.60.

The defendant Cooke's motion and supplemental motion for a new trial were overruled and the trial court rendered judgment in accordance with the verdict of the jury from which action of the court the defendant Cooke appeals. No appeal was taken by the defendant Lee McNutt.

The defendant presents his numerous assignments of error under six propositions.

It is first contended that the court erred in refusing to permit the defendant, C. C. Cooke, to amend his answer and cross petition.

After a jury was empaneled to try the cause, Cooke asked leave to amend his answer and cross petition by alleging that the $2400 and $3950 notes and mortgages securing the same were given by Lee McNutt to S. E. Townley, for the purpose of attempting to hinder, delay and defraud the creditors of McNutt.

This motion to amend was denied by the court on the grounds that it came too late, was a surprise to the plaintiff and was no defense to defendant Cooke.

After all the evidence was adduced and the case closed, defendant Cooke asked leave to amend his answer and cross petition for the same reasons as in the prior motion, together with the further plea that the $3,950 note alleged to have been given on September 12, 1947, was in fact given on January 2, 1948. This motion was de-

nied for the same reasons as the prior motion.

Defendant admits that to grant or refuse permission to amend pleadings during the trial is within the discretion of the trial court and that such ruling will not be disturbed on appeal except for clear abuse thereof.

The evidence discloses that the note and mortgage were, in fact, made and entered into on September 12, 1947, but that they were not signed until the 2nd day of January, 1948; that the mortgage was filed on the 3rd day of January, 1948, and that the defendant, on the 15th, 16th, or 17th of January, 1948, took possession of the mortgaged cattle and thus had constructive notice of the mortgage lien, therefore, these facts, if alleged would not constitute a defense for Cooke.

As to the suggested amendment alleging that the notes and mortgages were given by Lee McNutt to S. E. Townley to delay, hinder and defraud McNutt's creditors, we fail to see wherein this would affect a statutory lien on the cattle of which defendant Cooke had, at least, constructive notice. No creditors of McNutt were parties to this action and no creditors complained of the notes and mortgages which were the basis of Townley's cause of action against defendant Cooke.

This proposition is not sustained by the record. It does not affirmatively appear that the exercise of the discretion has operated to the prejudice of any rights of the complaining defendant, or that there was an abuse of the court's discretion in disallowing the defendant's suggested amendments.

Defendant's second proposition is to the effect that the court erred in overruling his demurrer to plaintiff's evidence and in overruling his request for an instructed verdict and that the verdict is not sustained by the evidence.

In this connection, plaintiff asserts that there was a complete failure of identification of any of the cattle involved in the replevin action covered by the mortgages.

In law actions a demurrer to plaintiff's evidence or motion for a directed verdict should not be sustained unless there is an entire absence of proof tending to show a right to recover. First State Bank of Addington v. Lattimer, 48 Okl. 104, 149 P. 1099, and in passing upon a demurrer to the evidence or a motion for a directed verdict the trial court must consider as true all of the evidence favorable to the party against whom the demurrer or motion is directed together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the demurrant or movant. Fleming v. Hodgson, 199 Okl. 261, 185 P.2d 181.

There was ample evidence to sustain the trial court's action in overruling the defendant's demurrer and motion for a directed verdict.

The contention that the verdict is not sustained by the evidence is untenable.

In a law action tried to a jury, the jury's verdict and trial court's judgment based thereon will not be disturbed because of insufficiency of evidence if there is any evidence reasonably tending to support it.

The principal complaint of defendant is as to the evidence establishing the idenity of the mortgaged cattle. This question was submitted to the jury under proper instruction, without exception.

The defendant's argument under this proposition attacks the credibility of the witnesses, Lee McNutt, mortgager, and S. E. Townley, mortgagee-plaintiff. Defendant points out some discrepancies in their testimony and asserts that many more are to be found in the record demonstrating the improbabilities and even the impossibilities of the truth of the alleged facts testified to by the witness McNutt and plaintiff.

An examination of the evidence of these witnesses does indicate discrepancies but Lee McNutt positively identified the cattle in possession of the defendant as those covered by the mortgage of the plaintiff. On the other hand, witnesses for defendant testified that they were not the cattle described in the plaintiff's mortgage; that on December 30, 1947, there were less

than three cattle on the 10th Street Farm (the place where the mortgaged cattle were kept by McNutt) than were there in September, 1947 (when the mortgages were purportedly made); that many cattle passed through the farm; that McNutt was constantly buying and selling; that S. E. Townley told Le Roy Judkins, along about the time the lawsuit was filed, that there was not a single cow that he could identify positively.

If the evidence of McNutt is believable and the jury so found, there was a detailed identification of the cattle covered by the mortgages, establishing that defendant Cooke took possession of the same and sold and converted them to his own use.

Thus, under the rule above stated, there is evidence reasonably tending to support the judgment.

The attack on the credibility of the witnesses is without merit. The jury was properly instructed as to that question and, this being so, the rule applicable is that credibility of witnesses and the weight and value of their testimony, in actions of legal cognizance, are questions exclusively for the jury to pass upon. Poston v. Alexander, 191 Okl. 653, 132 P. 2d 343.

However, defendant Cooke argues that there was a contract release and notice to the public signed by Lee McNutt, Nealtha McNutt and C. C. Cooke which Lee McNutt acknowledged under oath on August 29, 1947, and thereby agreed that from and after the date thereof no other persons, firms or corporations were to have any interest in live stock transactions except himself and C. C. Cooke; that notwithstanding these solemn pronouncements by Lee McNutt, he took the witness stand and undertook to impeach himself and impeach this contract under the terms of which Cooke had invested large sums of money; that the proof shows that Lee McNutt was a consistent dealer in livestock buying and selling promiscuously; that he was well known to be such a dealer at the time this agreement was entered into and that such knowledge was imputable to plaintiff Townley; that these notes and mortgages come squarely within the rule laid down by this Court in Howell v. Board, 185 Okl. 513, 94 P.2d 830 and Rogers County Bank v. Cullison, 186 Okl. 373, 98 P.2d 612, wherein it was held that a chattel mortgage given by an automobile dealer on an automobile which was a part of stock in trade to mortgagee who knew the automobile was being offered for sale to the public was ineffective as against purchaser from dealer in usual course of business without knowledge of mortgage, notwithstanding that mortgage was filed of record.

This argument is untenable. The dairy farm where these cattle were kept was not shown to be a sales barn, where the public came to buy, trade or sell cattle as was the automobile dealers place of business so as to bring it within the rule of commerce announced in the above cases.

Defendant's third proposition is that there was a material and fatal variance between the pleadings and the proof in reference to plaintiff's second cause of action covering the $3,950 note and mortgage asserting that the $3,950 note and mortgage alleged in the petition as having been executed on September 12, 1947, was not in fact executed or delivered to plaintiff until January 2, 1948; that no attempt at any time was made by plaintiff to amend his pleadings to conform to the proof.

Evidence was introduced without objection showing that the note and mortgage which constituted the basis of plaintiff's second cause of action bore the date of September 12, 1947, but that they were actually signed on January 2, 1948, and filed for record on January 3, 1948, and that the conversion occurred subsequent thereto. Under these circumstances we adhere to the rule that where evidence is introduced without objection and it appears that the substantial rights of the parties have not been affected, the amendment will be deemed to have been made. Mitchell v. Dadas, 167 Okl. 390, 30 P.2d 179.

Defendant's proposition four is that the jury ignored and refused to give consideration to the court's instruction No. 9, which provided:

"You are instructed that there has been introduced some evidence relating to an undertaking to substitute certain cattle in place of cattle claimed to have been covered by the mortgages, or some one of them, which had been sold, and you are instructed that under the law, such substitution cannot be made in such manner as would bind third persons, or give them notice thereof, unless the mortgage or mortgages in question were amended and re-filed, and you are therefore instructed that you are not to consider any cattle claimed to have been substituted for other cattle, as being covered by either of the mortgages relied upon in this case."

It is contended that defendant was entitled to certain credits shown to have been due McNutt from plaintiff and that McNutt was permitted to sell 10 head of the cattle and substitute 2 head; that by reason thereof the jury evidently ignored this instruction. We do not agree. The evidence as to the value of the cattle converted, excluding the 2 head substituted was far in excess of the amount of the judgment. This being true, the presumption is that the jury followed the instructions of the court.

In proposition five defendant contends that the court erred in refusing to give defendant's requested instructions; that, taken as a whole, the court's instructions were ambiguous, vague and indefinite and failed to give the jury a fair perspective either of the law or the facts in the case on trial.

No objections or exceptions were taken to the instructions given by the court. No claim was made that the instructions did not cover the issues. The objections to the instructions appear to be to the structure rather than the substance.

The instructions, when considered as a whole, fairly presented the issues to the jury and it was not error to refuse defendant's requested instructions.

Defendant's sixth and last proposition is that the court erred in refusing to sustain the motion for a new trial and supplemental motion for a new trial because the judgment was not sustained by the evidence.

It is admittedly the rule in this jurisdiction that the trial court should set aside the verdict of a jury unless it is satisfied that substantial justice has been done. Linderman v. Nolan, 16 Okl. 352, 83 P. 796. But the granting or overruling of a motion for a new trial is largely a matter of discretion for the trial court, and its judgment will not be interfered with on appeal unless it clearly appears that its discretion was abused. Yellow Cab Operating Co. v. McNamara, 173 Okl. 572, 49 P.2d 563. After a careful examination of the entire record we cannot say that the trial court's discretion was abused.

Judgment affirmed.

Judgment is hereby rendered as requested by plaintiff on the supersedeas bond against C. C. Cooke, principal, and C. C. Cooke, Jr., and D. J. Dennehy, sureties, in the amount of the verdict and judgment with interest at 6% per annum from date of judgment and costs.

ARNOLD, C. J., HALLEY, V. C. J., and CORN, DAVISON, O'NEAL and BINGAMAN, JJ., concur.

WELCH, J., dissents.

WELCH, Justice (dissenting).

This case presents an effort by McNutt and Townley to obtain a large sum of money from Cooke on the theory that McNutt owed such sum to Townley and that he, McNutt, delivered cattle to Cooke upon consideration of Cooke orally agreeing to pay such money to Townley, and which cattle were under mortgage to Townley.

The desired judgment against Cooke was obtained on the testimony of McNutt, but the record indicates strong probability of injustice against Cooke, and the record definitely demonstrates that Cooke is entitled to a new trial to present his defense theory, and to have each item of his defense correctly and fairly presented to the jury, and to use the newly discovered evidence referred to in the motion for new trial on that ground.

Facts which are established with certainty beyond dispute are that on August 29th, 1947, Cooke and McNutt, by written contract, entered into a joint venture or a relationship of employer and employee whereby McNutt, who was engaged in the business of buying and selling cattle, was to take and receive money furnished by Cooke and buy and sell cattle for Cooke for a compensation to McNutt of 10 cents per hundredweight. Cooke furnished substantial funds and the business continued about four months and involved several hundred head of cattle bought and sold by McNutt. The venture was a definite loss to Cooke and he brought about dissolution of the relationship in December, 1947, and upon accounting he took and received 126 head of cattle from McNutt which had been bought with his, Cooke's money.

Thereafter, in January, this suit was filed and McNutt claimed that in addition to the 126 head of cattle delivered to Cooke in December, 1947, that he had also, about January 15, 16, or 17th, delivered Cooke an additional 28 head of cattle (under mortgage to Townley) upon condition or agreement of Cooke to sell them and pay the money to Townley. It was the contention in part that Townley had advanced $3,950 to McNutt in September, 1947, and that McNutt had bought these 28 head of cattle with Townley's money and had given him a mortgage on them for repayment. All of this was vigorously disputed by Cooke and one or more disinterested witnesses, and by important physical and documentary facts.

Bear in mind that McNutt contended he made this 28 cow deal and transaction with Cooke more than two weeks after he and Cooke had terminated all business relations between them. It is not understandable why he would so transfer these cattle to Cooke with whom he had severed all business relationship instead of transferring them to the several other people with whom he then continued to own and hold cattle. Why didn't he turn them over to Townley? Or get permission of Townley to sell them as he had a number of other cattle which he had purchased with Townley's money? Or at least that was testified as to other cattle by both McNutt and Townley. When McNutt and Cooke started operations together on August 27th, 1947, they did so by written contract. When they closed their business of buying and selling cattle in December, 1947, and on about December 30th, or 31st, they made a written list or inventory of the Cooke cattle held by McNutt, and by written contract on the morning of January 3, 1948, they evidenced their complete settlement and termination of their business relationship by written contract. Yet, according to McNutt's testimony, two weeks later, without any written contract or even a written memorandum McNutt transferred or delivered to Cooke 28 head of cattle under mortgage to Townley, on the mere oral promise of Cooke that he would sell them and pay the money to Townley. That was a transaction which did not purport to bring any consideration whatever to either McNutt or Cooke, but which made McNutt liable to a penitentiary sentence, at least, if Cooke did not make complete payment to Townley. It is quite difficult to believe that the transaction could possibly have been made as McNutt said it was, yet, Townley's right to sustain this judgment against Cooke depends absolutely and solely on that testimony by McNutt. Bear in mind that when this replevin writ was issued about a week later none of the 28 head of cattle were found in Cooke's possession and the sheriff's return so stated. Townley went with the sheriff to look for his cattle in Cooke's possession and although they found some 60 head of cattle being held by Cooke, Mr. Townley knew of the "not found" return made by the sheriff. He so testified. He also testified that he did find about 15 head of cattle that he could identify, or nearly that many that he thought he could identify, but he and the sheriff left them in Cooke's possession and the sheriff made the "not found" return as above stated. Townley had some theory that the reason, or one of the reasons that was done, was because the cattle were under a good shed and could have plenty of hay. But certainly Townley's right to sustain the judgment in the full amount of $5,447.95 depends solely upon McNutt's tes-

timony as to his extraordinary 28 cow transaction with Cooke. McNutt stated positively that this oral transaction was had in the presence of a third person, E. D. Davis, but that was vigorously disputed by Cooke and by the disinterested person Davis, and all reason disputes it as well.

When was that 28 cow deal made between McNutt and Cooke when Cooke agreed to take the cattle and pay the Townley debt? McNutt said the deal was made January 14th and he remembered and fixed that date because it was while he was engaged in a transaction with E. D. Davis and concerning the Davis farm. McNutt and Davis did have a transaction about the Davis farm on January 14th, with documents passing between them on that date, so that is the date according to McNutt when Cooke agreed to pay Townley. But note this, McNutt told Townley two weeks before on January 2nd that Cooke was going to pay him, as if the weird deal between McNutt and Cooke had *theretofore* been made. Cooke testified that McNutt so advised him on January 2nd, and as Cooke said "and every time I seen him afterward." Cooke was sure it was that day because that was the day he went to see McNutt and got him to sign the note and mortgage dated September 12th. That would clearly imply that McNutt made the 28 cow deal with Cooke on or before January 2nd. But that would not do for McNutt, that is, he could not place himself in the position of having made that deal with Cooke before January 2nd, because the mortgage was not filed for record until January 3rd, and if Cooke closed a valid deal for the 28 cattle on or before January 2nd, he would have them free of the Townley mortgage which was not filed until January 3rd. Up to January 2nd Cooke and Townley did not know each other. Townley so testified and so did Cooke. McNutt never told Cooke from August to January anything at all about Townley. So we have McNutt claiming to make this 28 cow deal on January 14th, but telling Townley two weeks before "that Mr. Cooke was going to pay him every cent he owed him," in the language of Townley. Bear in mind that it was specifically testified that when McNutt and

Cooke and Cooke's bookkeeper made inventory of the 126 cattle late in December nothing whatever was said by any one about any Townley cattle or any cattle mortgaged to Townley, and in fact the Townley mortgage for $3,950 on the 25 head of cattle did not exist until it was signed January 2nd and recorded January 3rd.

Note that in this action filed January 22, 1948, Townley solemnly pleaded a note and mortgage dated and alleged to have been executed September 12th, 1947, for $3,950, a part of his debt. Defendant Cooke did not know or anticipate anything else until evidence in plaintiff's case in chief and near the close of his case, established conclusively that the note and mortgage were executed on January 2nd, 1948, just a few days after final failure of the McNutt-Cooke enterprise or business venture.

Thereupon defendant Cooke sought to amend his pleadings to allege that such documents were not executed in September, 1947, as alleged by Townley as the foundation of his action, but were executed fraudulently in January, 1948. At that later date McNutt was the disgruntled former partner of Cooke and if the note and mortgage were fictitious or did not represent any valid indebtedness or if either was otherwise knowingly invalid, then the transaction represented nothing more than a part of a deliberate attempt to defraud Cooke.

The trial court refused to permit Cooke to so amend his pleadings and to so present such issue to the jury. I can see no justification for that ruling and I think the court manifestly erred.

It is not for this court to say that this January note and mortgage transaction, dated back to September, was fraudulent in whole or any part, but certainly the defendant was entitled to present that contention by pleading and evidence and to have it passed upon by the jury.

The majority opinion confuses this request to amend with a former request which was made when the trial commenced. Then permission was requested merely to amend to allege that the execution of the note and mortgage on September 12, 1947, was in fraud of general creditors of McNutt. I

think that request was properly denied, but this later request was different in form and substance and it tendered an issue of fraud directly between McNutt and Cooke. Also the majority opinion erroneously refers to this application as having been made "after all the evidence was adduced and the case closed". If that were correct the request might have been too late, but in fact this request was made at the close of plaintiff's case. The information that the note and mortgage were executed January 2, 1948, came from plaintiff Townley as a witness in his own behalf, and he was the last witness called to establish plaintiff's case in chief. Therefore it would seem clear that this application was timely made. Also the error of the court in this particular was specifically called to the court's attention in the motion for new trial.

In Platt v. Wyatt, 192 Okl. 172, 135 P.2d 990, this court held:

> "Amendments to pleadings are liberally allowed so long as such amendments are in furtherance of justice, and amendments which even change the cause of action may be permitted, providing such amendments do not substantially change the plaintiff's claim. 12 O.S.1941 § 317."

This ruling has been followed in many cases both before and after. In McMillan v. Atlas Life Insurance Company, 195 Okl. 125, 155 P.2d 516, this court said:

> "The statute relative to amendment of pleadings contemplates allowance of amendments in furtherance of justice and to the end that a case may be fully tried on the merits if reasonably possible."

Again in Detwiler v. Duncan, 199 Okl. 189, 185 P.2d 200, this court held:

> "Amendments to pleadings are favored, and a trial court should be liberal in the allowance of amendments, especially where no element of surprise to the adverse party is involved. 12 O.S. 1941, § 317."

Now in this trial McNutt claimed he received this $3,950 from Townley in September, 1947, that he deposited it in a stated bank outside of Oklahoma City, and checked it out of that bank in September, 1947, to buy the so-called "Townley cattle" including the 28 head of cattle above mentioned. Cooke could not have anticipated such testimony. The contrary was indicated by McNutt's August contract with Cooke and by all of McNutt's actions and dealings with Cooke throughout September, October, November and December, 1947, so Cooke was surprised by this evidence. When he checked the records of that other bank he found no such sum was deposited there, though there was a smaller account there, and he offered as newly discovered evidence that the original checks in McNutt's possession charged against that account, or photostatic copies thereof, would show that those checks or many of them were not used to buy any cattle at all. I think defendant Cooke was entitled to a new trial on this newly discovered evidence which was quite competent on the issue of fraud which he timely sought to allege by amendment.

And I find from the record that the verdict and judgment against Cooke is excessive in the sum of $1,984.26 if the mortgage note transaction between McNutt and Townley was wholly free from fraud or other invalidity. This sum is made up of items of $1,284.26 which, according to documents or written memoranda between McNutt and Townley, should have been credited on the note debt, and the sum of $700 represented by two cows of the 28 head which McNutt first claimed were "Townley cattle" but which he later admitted were not such, but were "substituted," as he stated. The purported substitution was invalid and the trial court so instructed the jury, yet no corresponding deduction was made, but, on the contrary, the verdict and judgment was for the maximum amount of $5,447.95, resulting in the excess above stated.

When the trial court approved this jury verdict, or rather when he declined to disapprove it, his statements indicate an appreciation of the fact that self-contradiction by statements and actions and documents cast serious doubt on the purity of motives and the verity of the testimony of McNutt on which the verdict and judgment was based. That indicated attitude of the trial

court would alone have justified his granting a new trial under authority of our former decisions in Yarnell v. Kilgore, 15 Okl. 591, 82 P. 990; Hogan v. Bailey, 27 Okl. 15, 110 P. 890; Rison v. Harris, 50 Okl. 764, 151 P. 584; Oklahoma City v. Leggs, 175 Okl. 209, 51 P.2d 942; Hall v. Polson, 130 Okl. 136, 265 P. 1068, and others.

If that action of the court does not justify reversal it is beyond doubt a strong circumstance, adding certainty to the conclusion that this court should grant a new trial and that Cooke be permitted to make all desired allegations of fraud and to submit the newly discovered evidence of documents of McNutt himself, to the end that all issues may be determined before Cooke is subjected to this liability which now shows to be so clouded with uncertainties and improbabilities as to brand it as wholly unjust unless and until the issues of fraud may be considered and disposed of.

And finally, let us note the valuation of the property involved. That is if defendant Cooke is liable at all it would only be to the extent of the valuation of the mortgaged property which McNutt claims that Cooke received. The mortgaged property was not found in Cooke's possession, but any receipt of it by him was based on what McNutt said. McNutt only claimed that he delivered to Cooke 26 head of cattle under mortgage to Townley. In January, 1948, McNutt made a list of those 26 head (exhibit 7) and then wrote after each item a valuation figure. That total valuation amounted to $4,195. But at that time the mortgage debt to Townley amounted to $6,350 plus interest of several hundred dollars, as shown by the record. Thus McNutt would have Cooke receiving cattle worth $4,195 and thereby becoming liable for the above debt.

Then McNutt took the position that these valuation figures on exhibit 7 represented not the then value of the cattle, but represented what he paid for them in September, 1947. How he could remember each purchase price figure is past understanding, as he specifically testified he had no book entries nor records of any kind to identify these separate cost figures, and he bought and sold an average of 80 to 90 head of cattle each month, some days he bought or sold 30 or 40 per day, by his own testimony, but that is no stranger than his testimony then as to increased values or profits, for according to his subsequent testimony he had a profit in these 26 head of cattle of $1,600. He testified to a substantial profit as to each and every one of these 26 head amounting to an average profit of $61.53 per head, or 38 plus percent profit, while during the same period of time from August to and including December, 1947, he lost very substantial money on the cattle he bought for Cooke.

His final testimony as to this increased valuation places the total value of these 26 head at $5,795 for which he would have Cooke agreeing to assume and pay a debt greater by at least $500 to $700 while his first fixing of these valuations would have Cooke receiving cattle of the value of $4,195 and agreeing to pay a debt of $6,350 principal and several hundred dollars interest.

I think the record indicates that when McNutt made this list of these cattle in January, 1948, which was made preparatory to bringing this action, he was listing his conclusion as to the then valuation of the cattle. The list was made in preparation to file this lawsuit. The same exact descriptions and valuations were written into the affidavit in replevin as to these 26 cattle and so carried forward in the writ of replevin; and the question arises whether plaintiff can recover some $1,300 more for the alleged conversion of these cattle than he alleged they were worth in his affidavit in replevin.

It seems clear to me that McNutt fixed the value of these cattle in January, 1948, at $4,195, but at the trial thirteen months later in February, 1949, he raised his sights and testified that in January, 1948, they were worth $1,600 more, or $5,795. It seems to me the record is conclusive on this point that the maximum amount plaintiff could have recovered against defendant Cooke was $4,195, and not the amount of the verdict and judgment $5,447.95.

I am authorized to say that Mr. Justice GIBSON concurs in these views.

WILLIAMS, Justice (dissenting).

For reasons set out below, I am unable to agree with the majority opinion herein.

The record shows that in August, 1947, McNutt entered into a written agreement with Cooke by the terms of which McNutt was to engage in the business of buying and selling cattle on behalf of Cooke; Cooke was to furnish the money, McNutt was to do the actual trading, and was to be paid ten cents per hundredweight as his compensation.

In December, 1947, this agreement was terminated by Cooke, as he had a right to do by its terms, and an inventory was taken of the cattle then remaining in McNutt's possession which had been purchased under the agreement; there were 126 head, and they were all returned to Cooke, the exact date being in dispute.

On January 22, 1948, plaintiff Townley filed his petition in the case at hand, alleging that he held two promissory notes and chattel mortgages securing the same from McNutt; one note being for $2,400 executed in June, 1947, and filed for record in August, 1947, and the other for $3,950 executed on September 12, 1947, and filed for record on January 3, 1948. Plaintiff alleged that the mortgages securing the notes described a total of 38 cattle, including those here in dispute. He alleged that Cooke, with both actual and constructive notice of the mortgage, took possession of the cattle, on January 15, 16 and 17, 1948, promising McNutt that he would pay Townley what McNutt owed him.

Immediately before trial, defendant Cooke requested permission to amend his answer and cross-petition to allege fraud in the execution of the $3,950 note and mortgage, in that the mortgage could not have been signed on September 12, 1947, because McNutt was in California at that time. This request was denied.

Five witnesses testified for plaintiff, the last one called being Townley himself. Near the end of his testimony, Townley admitted that the $3,950 note and mortgage were not executed on September 12, 1947, as he had stated in his petition, but that they were actually signed on January 2, 1948, the day before the mortgage was filed for record.

At the conclusion of plaintiff's evidence, defendant Cooke again requested permission to amend his answer and cross-petition to allege fraud on the part of McNutt and Townley in the execution of the $3,950 note and mortgage, and further requested permission to amend his pleadings to conform to the proof in this regard. These requests were also denied.

I think these requests should have been granted. See McAllister v. Ealy, 98 Okl. 223, 225 P. 146, wherein the court said:

> "In actions at law and where a charge of actual fraud is involved in suits of equity, not only is fraud never presumed, but it must be affirmatively alleged and proven by the party, who relies on it."

See also Stafford v. McDougal, 171 Okl. 106, 42 P.2d 520, wherein the court said with regard to fraud when relied upon as a defense:

> "Fraud is never presumed, but it must be affirmatively alleged and proven by the party who relies on it, and cannot be inferred from facts which may be consistent with honesty of purpose."

To the same general effect is 21 Am.Jur., Fraud and Deceit, section 252.

An examination of the court's instructions discloses that the court referred to the "mortgage given on September 12, 1947", and this in the face of the fact that plaintiff's own uncontradicted evidence was that it was signed on January 2, 1948. My conviction that defendant Cooke should have been allowed to amend his answer and cross-petition so as to conform to the proof and plead fraud is supported by the following facts which appear from the record: McNutt testified that the unusual 28 cow deal was made with Cooke on January 14, 1948; however, plaintiff Townley testified that McNutt told him on January 2, 1948, that Cooke was going to pay him (Townley) what McNutt owed him, as if the deal had already been made; furthermore, at that time (January 2, 1948) Cooke and Townley had never met. Also, there is no satisfac-

tory explanation in the record as to why McNutt two weeks after he had formally severed all business relationships with Cooke, should expose himself to criminal prosecution (for disposing of mortgaged property) by turning over to Cooke the cattle upon which Townley held a mortgage, with no written memorandum or agreement whatsoever.

The amendment which Cooke requested permission to make meets the requirements of the following rule set out in Doyle v. Oklahoma Press Pub. Co., 206 Okl. 254, 242 P.2d 155, 157:

> "The principal limitations upon the rule (i. e., that amendments will be allowed in the furtherance of justice) are that the amendment must relate to the time, or prior thereto, of filing of the petition, and it must not state a new cause of action. It is at this point that difficulties arise and differentiations are made as each new, varied situation is presented. In 41 Am.Jur., Pleading, section 304, it is said: '* * * The test is not whether, under technical rules of pleading, a new cause of action is introduced, but rather, the test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant. * * *'"

In the case at hand, defendant Cooke had pleaded a general denial. It is elementary that such plea amounted to a denial of every material ingredient of plaintiff's claim, one of which was the existence of a valid mortgage from McNutt to Townley covering the cattle involved. Although by the terms of the quoted rule from Stafford v. McDougal, supra, fraud must be affirmatively pleaded to be available to the defendant, it is to be noted that in this case a plea of fraud is not in any way inconsistent with the general denial previously pleaded, since the fraud allegedly involved here goes to the existence and validity of the alleged mortgage. Such being the case, the amendment should have been allowed, since it relates "to the time, or prior thereto, of filing of the petition" and does not "give rise to a wholly distinct and different legal obligation".

The record further shows that the check which Townley allegedly gave McNutt as a loan (for which he allegedly took a note and mortgage in the amount of $3,950 almost 4 months later) bore notations indicating that it was given for the purchase of 25 cows, not for a loan on 24 cows (the number specified in the $3,950 mortgage). Defendant Cooke never saw this check before the date of trial.

In the case at hand, there can be no doubt that if the purported mortgage were fraudulently executed (that is, if there were no bona fide mortgage indebtedness), plaintiff would not be entitled to recover as against defendant Cooke. Plaintiff's complaint that he would have been taken by surprise by the amendment carries little weight when it is considered that he himself admitted on the witness stand in effect that his previous statement in his petition as to the date of the execution of the $3,950 note and mortgage was not true.

After judgment, defendant Cooke filed a motion for new trial on the ground, among others, of newly discovered evidence. This evidence was set out by affidavit attached to the motion, and most of it went to the defense offered in the amendment. It included the following:

Defendant McNutt testified that the $3,950 check from Townley was deposited in a bank at Britton, Oklahoma. Subsequent investigation showed that no such deposit was made. McNutt further swore that he had written checks aggregating $3,950 against the same bank for the purchase of cattle covered by the purported mortgage during a designated period of about ten days. Subsequent investigation showed that no such check or combination of checks had been written against that bank account in the amount of $3,950 during the period in question. On the 10th day of September, 1947, McNutt purchased 25 cows from one Floyd Lipps for $3,750, taking delivery on September 11 or 12; on September 11 McNutt withdrew $3,750 from the Cooke-McNutt bank account in an Oklahoma City bank; (witness DeLaughter, bookkeeper for the Cooke-McNutt enterprise, had previously testified that his books showed a sale of cattle for

$3,950 on September 12, 1947); on September 12, 1947, the $3,950 check written by Townley allegedly as·a loan to McNutt on 24 cattle, but bearing notation indicating it was for the purchase of 25 cattle, was deposited in the ·Cooke-McNutt bank account.

· I have previously shown that Cooke was refused permission ·to plead the allegedly fraudulent scheme of Townley and McNutt as a defense, and it may logically be assumed that the court overruled the motion for a new trial because most of the newly discovered evidence went to. the defense Cooke had not been allowed to plead. I believe that Cooke should have been allowed to plead such defense, in the furtherance of justice. Such being the case, the motion for new trial should have been granted. The newly discovered evidence meets the requirements of 12 O.S. 1951 § 651, subd. 7. See Holly v. Holly, 174 Okl. 626, 51 P.2d 527; Holmes v. Chadwell, 169 Okl. 191, 36 P.2d 499.

It may be suggested that the newly discovered evidence summarized above was merely cumulative to evidence produced at the trial; insofar as it ·merely impeaches the witness McNutt, this is true; however, it also explains for the first time what the $3,950 check from Townley was really for (payment for 25 head of cows from McNutt, which McNutt had purchased the day before from Floyd Lipps).

The record ·conclusively demonstrates that defendant Cooke was surprised at the trial in the following particulars: he could not have known that plaintiff would give testimony that the allegation in his petition that the mortgage was executed on September 12, 1947, was not true and that it was really executed on January 2, 1948; he could not have known that the $3,950 check from Townley to McNutt bore a notation indicating that it was for the purchase of 25 cows instead of for a loan on 24 cows as alleged; therefore, he had no logical reason for suspecting that there might be a connection between the $3,950 check dated September 12, 1947, from Townley to Mc-Nutt and the sale on September 12, 1947 of 25 head of cows for $3,950, said cows presumably being the ones purchased one or two days before from Floyd Lipps. Also, he could not have known that McNutt would testify, that he (Cooke) agreed to take the 28 cattle and pay Townley what McNutt owed him, if that were not true and as he contended it was not.

Amendments to pleadings are to be liberally allowed in the furtherance of justice; see 71 C.J.S., Pleading, §§ 275b, 281,.285d and 294; Beaty v. Armstrong, 95 Okl. 109, 218 P. 516; and Shade v. Miller, 131 Okl. 23, 267 P. 626.

Under all the peculiar facts and circumstances in this case—in view of the unusual and unexplained transaction by which Cooke allegedly got possession of the cattle, the fact that the $3,950 check bore notations indicating it was for a purchase rather than a loan, the new and more logical explanation of such check outlined in the newly discovered evidence offered on motion for new trial, the fact that Townley's right to recover rests entirely upon the testimony of McNutt, who willingly testified that he had disposed of mortgaged property—in view of all these facts, I believe the court should have allowed Cooke to amend his pleadings, or, thereafter, should have granted his motion for new trial.

It should perhaps be noted that my opinion herein expressed is not based upon a conclusion as a matter of fact, that Townley and McNutt were guilty of fraud, but upon a conclusion, as a matter of law, that in the situation presented herein, defendant Cooke should have been permitted to amend and the issue of fraud should have gone to the jury for its decision thereon.

I respectfully dissent.