Chandos A. HOSKYNS et al., Plaintiffs in Error,

v.

Tono L. HOOKER et al., Defendants in Error.

No. 35706.

Supreme Court of Oklahoma.

March 22, 1955.

Rehearing Denied May 24, 1955.

Milsten, Milsten, Johnston & Morehead, Felix A. Bodovitz, Lewis C. Johnson, Manatt, Knight & Knight, Tulsa, for plaintiffs in error.

G. C. Spillers and G. C. Spillers, Jr., Tulsa, for defendants in error.

**1110**

WILLIAMS, Justice.

This action involves the validity of two deeds dated March 3, 1945, from Flora B. Barton, a single woman, to her sister, Lucy H. Hooker, a widow.

Plaintiffs, who consist of the special administrators of the estate of Flora B. Barton, deceased, and all of the heirs of Flora B. Barton except the two defendants, brought this action against Tono L. Hooker, administrator of the estate of Lucy H. Hooker, deceased, and Tono L. Hooker and J. D. Hooker individually, seeking to cancel the two deeds above mentioned and to quiet title to the real property covered therein. Tono L. Hooker and J. D. Hooker are the sons and sole heirs of Lucy H. Hooker, deceased, and are nephews of Flora B. Barton, deceased.

Lucy H. Hooker and Flora B. Barton were sisters and had lived together for many years in Flora B. Barton's home. Lucy H. Hooker was the older of the two sisters, a widow, and had little, if any, income of her own. Her son, Tono L. Hooker, and his daughter also lived in Flora B. Barton's home. Flora B. Barton was a single woman and owned a considerable amount of real property and had a substantial amount of income. In 1945 she is alleged to have made, executed and delivered the two deeds in question, covering all of her real property, to her sister, Lucy H. Hooker. These two deeds were not recorded, however, during the lifetime of either of the two sisters. Mrs. Hooker died in 1949 and Miss Barton died in 1950. After Miss Barton's death, the defendants placed the deeds of record.

Plaintiffs attack the deeds on two grounds, alleging that the deeds were not executed by Flora B. Barton and are forgeries and that if they were in fact genuine they were not delivered with the intention that they should become presently effective and were gifts causa mortis and thereby invalid.

The trial court held that the deeds were not forgeries but were valid gifts inter vivos and vested absolute title in the grantee, and plaintiffs appeal.

Plaintiffs' first proposition urges that the deeds are forgeries and that the trial court erred in not so holding. In support of this contention plaintiffs rely on the testimony of two handwriting experts to the effect that the deeds are forgeries. Defendants produced a handwriting expert who pronounced the signatures on the deeds genuine, however, as well as several persons who were familiar with the signature of Flora B. Barton and testified that in their opinion the signatures on the deeds were those of Flora B. Barton. Furthermore, the Notary Public who took the acknowledgments on the deeds testified as to the execution of the deeds in her presence by Flora B. Barton. Under such circumstances we cannot say that the holding of the trial court that the deeds are genuine is against the clear weight of the evidence.

Plaintiffs' remaining proposition is that the findings of fact and conclusions of law of the trial court are against the clear weight of the evidence because the grantor did not deliver the questioned deeds with intention to pass title.

The evidence in the case is accurately and concisely summarized in the trial court's findings of fact, which are as follows:

"1. The major part of the property involved in this cause came to Flora B. Barton from her mother, Mary J. Barton, who was also the mother of Lucy Hooker, Margaret Hoskyns, and Dona Barton and Ella Barton Eddy.

"2. For many years prior to her death in 1937, Mary J. Barton had been taken care of by Flora B. Barton. In 1933 Lucy Hooker came to live with Flora B. Barton and to help Flora B. Barton take care of their mother. Tono Hooker, Lucy Hooker's son, whose wife had just died, and his five year old daughter, Mary Jane, also came to live with Flora B. Barton. Flora also took care of her invalid sister, Ella Barton Eddy.

"3. Because of earlier bitter lawsuit in which Margaret Hoskyns had;

charged Mary J. Barton with fraud, there was an estrangement between Flora B. Barton and her sister, other than Mrs. Hooker and Mrs. Eddy (her invalid sister).

"4. After the death of Mary J. Barton, the family, composed of Flora B. Barton, Lucy Hooker, Tono Hooker, Mary Jane Hooker and the invalid sister, Mrs. Eddy, continued to live together. Flora B. Barton loved Mrs. Hooker and looked upon Tono and Mary Jane almost as her son and granddaughter. Flora managed the Farmers Market and hired Tono as a sort of an assistant. Flora Barton was strong-willed and cared little for her relatives other than the members of her household and J. D. Hooker, another son of Lucy. Flora B. Barton and Lucy Hooker had for many years carried joint accounts in various banks, although the money therein came almost entirely from Flora B. Barton.

"5. In 1945, Flora B. Barton executed the two deeds in question here and acknowledged them before a notary public. She delivered them manually to Lucy Hooker, and Lucy Hooker gave them to her son, J. D. Hooker, to keep for her. Lucy Hooker told J. D. Hooker and Tono Hooker that Flora B. Barton was not to be evicted and was to be allowed to manage the market as long as she desired. The deeds were not recovered until after Flora B. Barton's death.

"6. Thereafter, Flora B. Barton told various people that she had deeded the property to her sister Lucy. However, she continued to exercise dominion over it as though she were the owner. She assessed the property for taxes, paid taxes thereon, insured the property, adjusted insurance losses, rented it and collected the rents, repaired it and signed sewer petitions in relation to it, all in her own name. In business dealings, she held herself out as owner of the property. She sold one piece of property to the Church of the Open Door, signing the deeds in her own name, not disclosing to the grantee that she had executed the previous deeds. The down payment of $500.00 was made by check payable to Flora Barton. On the day this check was cashed, Flora Barton and Lucy Hooker entered their jointly-owned safe-deposit box. After Flora's death, an envelope was found therein containing $500.00, marked 'Church of the Open Door, for lot dated 2/28,' with the further notation 'Flora B. Barton or Tono L. Hooker, F.B.B.' The remainder of the purchase price, $2250.00, was paid later, and after Flora's death in the box another envelope was found containing $2250.00 marked '$2250. Flora B. Barton or Lucy H. Hooker, check for lot Church of the Open Door.' In 1945, shortly after executing the deed to Lucy, Flora B. Barton talked to an Elmer Gafford about selling him a piece of property. She told Gafford that the property belonged to Lucy, and Gafford talked about it to Lucy and Flora together. Flora thereafter executed a deed to Lucy, which was put of record and the purchase price was paid to Lucy.

"7. Lucy died in 1949. After her death, the deeds were not recorded and Flora continued to exercise dominion over the property as before. She did not ask for a return of the deeds nor attempt, by will or otherwise, to make any other disposition of the property. Flora died in 1950 and after her death, the deeds were placed of record. Flora and Lucy continued to look after Mrs. Eddy until their deaths, and Tono Hooker now cares for her.

"8. The principal question of fact in this case is what was stated, intended or understood by both Flora and Lucy at the time of the manual delivery of the deeds. Plaintiffs contend that it was understood that the deeds were not to be effective unless Lucy survived Flora, or at least that Flora would have the right to recall the deeds during her life. They asked me to infer this from the fact that Flora did not purport to be acting as Lucy's agent, but to be acting in her own right, and that

no act of hers, so far as the dominion she exercised over the property was concerned, evidenced that she considered herself as an agent of Lucy. On the other hand, defendants say that the testimony of the unrelated witness who was present, the fact of manual delivery, the acknowledgment of the deeds, the statements made by Flora to others that she had deeded the property, the segregating of the proceeds of the sale from the Church of the Open Door, the failure to ask for the return of the deeds after Lucy's death, her expressed intention to deed the property to Lucy and reserve a life estate therein, all evidence a complete and irrevocable delivery, with some sort of loose arrangement whereby Flora was to retain the management and control of the property. I am inclined to agree with defendants. It is true that Flora did not purport to be acting as agent for Lucy, but when it is remembered that Flora was a strong and dominating personality, that she and Lucy were extremely close, and that she had always managed the property, her acts do not seem entirely inconsistent with the fact that she recognized Lucy as the owner of the property. I think that after the execution of the deeds, she felt it easier to manage the property if it were carried in her name. Furthermore, Flora was the one with business experience and Lucy trusted her completely and Flora knew that whatever she did would be all right with Lucy. I find, therefore, that at the time of the manual delivery of the deeds, Flora intended to pass, and Lucy to receive, an irrevocable and presently vested estate in the property, subject to Flora's right to manage the property or retain a life estate therein."

It is apparently plaintiffs' contention that Flora B. Barton's continued possession of and control over the property and income therefrom after the execution and delivery of the deeds in question prove that she only intended the deeds to be effective after her death. We do not agree.

It is true that when the question of delivery is in dispute, the fact that the grantor remains in possession of the property is a circumstance tending to negative delivery. Maynard v. Taylor, 185 Okl. 268, 91 P.2d 649; Yarbrough v. Bellamy, 197 Okl. 493, 172 P.2d 801.

It is also true, however, that the fact that a grantor is permitted to remain in possession and control of the property conveyed will not defeat the legal consequences of an actual delivery of the deed. Shintaffer v. Rorem, 167 Okl. 647, 31 P.2d 559. We have also held that the fact the grantor continued in control and management of the property conveyed during his lifetime did not destroy the presumption of delivery arising from due execution of the deed and possession thereof by the grantee in cases where the grantor and grantee were husband and wife or parent and child. Fisher v. Pugh, Okl., 261 P.2d 181; McKeever v. Parker, 204 Okl. 1, 226 P.2d 425; In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933. We perceive no reason for enunciating a different rule where the parties are sisters living under the same roof. In any event, it is not necessary in the case at bar to rely on presumptions or circumstantial evidence as the record contains the direct, positive, uncontradicted testimony of two eyewitnesses to the unconditional delivery of the deeds in question.

A party asserting nondelivery of a deed in possession of the grantee, as plaintiffs do here, has the burden to show by clear and convincing evidence that the deed has never actually been delivered. Abrams v. Neal, 178 Okl. 158, 61 P.2d 1103; Watkins v. Musselman, 205 Okl. 514, 239 P.2d 418. The trial court's finding that plaintiffs had failed to sustain such burden is not clearly against the weight of the evidence and therefore must be affirmed.

JOHNSON, C. J., and WELCH, CORN, DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.