Howard CHAPMAN, Plaintiff in Error,

v.

C. C. CHAPMAN, Defendant in Error.

No. 40669.

Supreme Court of Oklahoma.

March 9, 1965.

832

Ed Morrison, Tulsa, Bassmann, Gordon, Mayberry & Lavender, Claremore, for plaintiff in error.

John Charles Feagins, Claremore, for defendant in error.

BERRY, Justice.

The questions to be determined herein arise by appeal from a judgment rendered by the trial court, setting aside a warranty deed: " * * * judgment for the plaintiff setting aside the deed in question for the reason that the same was given without consideration and without * * * with the intention that it not be recorded until after the death of the grantor, and it was invalid for those 2 reasons. * *." Judgment was entered granting plaintiff the relief sought in the petition.

C. C. Chapman, father of both parties (herein referred to as grantor), was more than 84 years of age at his death on March 6, 1962, and was wholly supported by old age assistance; he owned a small homestead and vacant lots of approximately $1500.00 value in Oologah, Oklahoma. On August 12, 1957, as a single man, he executed a warranty deed for expressed consideration of $10.00 and other valuable considerations to his son, Howard Chapman, defendant herein, as grantee. The scrivener who prepared the deed and took grantor's acknowledgment was deceased at the time of trial. The grantor married his housekeeper on October 18, 1961, and on October 24th defendant placed the deed of record. On December 29, 1961, the grantor filed this action seeking to set the deed aside. On February 15, 1962, the grantor executed a will devising a life estate in the home to his wife and the remainder in fee simple absolute to his son, a particularly described lot to his son, Charles H. Chapman, and the remainder of his property to the wife.

The grantor's action, filed December 29, 1961, sought cancelation of the deed and reconveyance of the property. The petition alleged execution of the deed with the intention same was to remain under his possession and control, to be recorded by defendant only upon the grantor's death; that grantor had informed defendant of this and the deed was to be recorded only in the event the grantor had not disposed of the property otherwise prior to his death; defendant recorded the deed without grantor's consent or knowledge; grantor had retained possession and control of the property at all times, and defendant had paid no consideration for the deed. Grantor died testate March 6, 1962, and the cause was revived by appropriate order in the name of Charles H. Chapman, hereinafter referred to as plaintiff, as executor of the grantor's estate.

Defendant's answer admitted grantor's ownership of the property and execution of the deed, but denied same was to be recorded only in the event of grantor's death without having disposed of the property. Defendant specifically alleged the deed was executed for valuable consideration, with the further understanding that as part consideration grantor might occupy the property for his lifetime. Defendant admitted the allegation as to recordation of the deed, but denied limitation or condition upon his rights under the instrument or that same was recorded improperly. Judgment was prayed quieting and confirming his title to the property. Prior to trial the answer was amended to allege the sum of $700.00 as consideration for the deed.

At conclusion of the trial the court took the matter under advisement, and thereafter entered judgment setting the deed aside as invalid and void. In rendering judgment the trial court called attention to our decision in Dowell v. McNeill et al, Okl., 315 P.2d 771 as authority for the

conclusion reached concerning validity of the deed.

■ As this is an equity proceeding it is incumbent upon this Court to examine the entire record and weigh the evidence in order to ascertain whether the trial court's findings and judgment are supported by, or are contrary to, the weight thereof. Therefore, we consider that evidence bearing directly upon questions relative to consideration, and that concerning the grantor's intention respecting execution of the deed. Parenthetically it should be noted there was no allegation or proof of undue influence, overreaching or fraud. Likewise, it is admitted by plaintiff that no questions relative to inadequacy of consideration or partial failure of consideration are involved herein.

The plaintiff lived next door in property deeded to him by grantor, who also had deeded property on the east side of the house to another son. Plaintiff also testified he was executor of grantor's will which devised a life estate to the widow and other property to plaintiff. Plaintiff had not discussed the deed with grantor and first learned of same when he found out defendant's deed covered his own property. This was cleared up by defendant giving plaintiff a deed to Lot 4 in April, 1962. Plaintiff knew Lucille Chapman, the wife, when she came to live with grantor in 1956, and knew of their marriage in 1961.

On cross-examination plaintiff stated he knew of and assisted in making repairs to grantor's house and "imagined" grantor had paid for the materials, but did not know whether grantor had put money into the improvements. Plaintiff knew grantor deeded the property to defendant in 1957; he thought grantor paid his own funeral expenses, but knew "I didn't pay none of it, and I know none of the other boys didn't pay any of it." Plaintiff did not believe defendant paid any funeral expenses, but did not know this for sure. Plaintiff often was around grantor during his last days but never knew of this suit being filed.

Plaintiff's wife testified concerning a telephone conversation between grantor and defendant when grantor was "awfully mad" and wanted defendant to bring the papers to him, and was going to have the law pick up his papers. The witness knew nothing concerning delivery or non-delivery of the deed, nor anything bearing upon consideration for the deed, or the lack thereof.

Grantor's widow testified for plaintiff and stated she came to live in grantor's home in 1956 and except for two months resided with grantor until his death, as they were married in 1961. She also testified grantor kept the deed in a box after execution, but did not know whether it was given to defendant on the day in 1961 when grantor and defendant had the box and were examining papers. She also stated grantor and defendant did not get along well. Following their marriage defendant recorded the deed and when grantor learned of this he directed a daughter-in-law to call an attorney who advised grantor concerning cancelation of the deed. After the Welfare Department advised the grantor his assistance check would be withheld he told defendant the deed should not have been recorded. After execution of the deed grantor continued to occupy the premises and claimed homestead exemption, although defendant paid for materials and made slight improvements. A roof and siding were put on the house and plaintiff paid for this but grantor furnished the money, although she thought the money came from insurance.

Cross-examination disclosed witness had not seen the deed in the box with grantor's papers, had not read the instrument, and did not know whether it was with the grantor's papers, although she testified the deed was not to be recorded until after grantor's death; grantor had $700.00 in twenty-dollar bills and made a trip to Nowata and paid $500.00 on his funeral; the receipt therefor was given witness;

upon his return home she placed same in a table drawer with other papers; later, when too ill to make the trip, she saw grantor give defendant another $200.00 in twenty-dollar bills; upon return from the undertaker's defendant handed a receipt to grantor who directed her to put it away in the drawer; the reason defendant's name appeared on the receipts was because grantor had this done to keep the Welfare Department from knowing grantor had paid for his own funeral. The witness denied defendant paid $700.00 for the deed to the property.

Defendant's evidence bearing upon execution of the deed and consideration therefor is summarized hereafter. The witness (Hufford) employed by the Nowata Funeral Home which handled grantor's funeral testified at length concerning grantor's funeral arrangements, refreshing his recollection from notes made from review of relevant business records. These notes were made part of this record. In July, 1960, grantor accompanied by a friend, came to the funeral home to discuss a prearranged funeral service; burial was to be in an adjoining state, in either of two types of casket the boys should select and grantor advised the funeral probably would be paid for by the boys before needed. Grantor deposited $50.00, and was advised any deposit into the trust fund could be withdrawn at any time upon presentation of the receipt by the person who made the deposit. No definite amount was decided upon because grantor did not decide on the particular service, although stating he hoped the type of funeral service desired could be paid for in advance. On December 28, 1960, defendant was issued a receipt for deposit of $500.00 for the prearranged funeral, and on May 4, 1961, another receipt showing payment of $200.-00 was issued defendant. Upon grantor's death the family completed funeral arrangements, the total cost amounting to $817.92. The widow paid $32.64 for burial clothing and defendant paid $35.28, the balance due. No deposits made had been withdrawn from the trust deposit after having been made. None of grantor's other sons had any discussion of financial arrangements for grantor's funeral.

The defendant identified the deed and testified that he gave $735.00 as consideration, to be paid out to the funeral director; grantor wanted defendant to have the property and never mentioned the deed should not be recorded; the grantor delivered the deed to defendant at the date of execution, and same remained in defendant's possession; the deed was withheld from record because the agreement was that grantor should continue to occupy the premises for life, but was to pay taxes and insurance. Defendant took care of most of grantor's business affairs and that no hard feelings existed between defendant and grantor. Defendant had made some repairs to the property, and had stored some of his personal property on the premises. Grantor stated defendant was to have the property and defendant advised grantor when the deed was recorded. When the deed was executed defendant gave grantor $10.00 and agreed that $735.00 was to be paid to the funeral home when needed. Defendant knew nothing of grantor's being unhappy because the deed was recorded until served with summons, and categorically denied there was family dissension, that conversations concerning the property took place or that grantor placed any conditions upon execution or recordation of the deed. The receipts for payments received for the prearranged funeral named defendant as payor, and his testimony was that they had been in his possession at all times since issuance by the funeral home.

 Three contentions are advanced as grounds for reversal of this judgment. Each contention is predicated upon decisional law, and rests upon applicability of these rules measured against the evidence disclosed in this record. The first contention is that where the grantee named in a deed is in possession of the instrument, a presumption in favor of delivery arises which can be rebutted only by clear and

positive evidence. This settled rule has been the basis of our decision in innumerable cases, and is declaratory of the general rule expressed both by text and judicial pronouncement. 26A C.J.S. Deeds § 184 b; 16 Am.Jur., Deeds, Sec. 110 et seq; Wasson v. Collett, 204 Okl. 360, 230 P.2d 258; Boys et al v. Long et al, Okl., 268 P.2d 890; State, etc. v. Leecraft, Okl., 279 P.2d 323. A corollary of this rule is that one disputing delivery of the instrument bears the duty of establishing non-delivery. McKeever v. Parker, 204 Okl. 1, 226 P.2d 425; Wasson v. Collett, supra.

The presumption of delivery of this deed arising from possession and recordation was rebuttable, but only by evidence relative to the claimed non-delivery of clear and positive character. The only evidence of non-delivery herein was the widow's testimony that grantor kept the deed in a box which at one time she handed to grantor, and thereafter observed defendant and grantor looking at the papers. Contrariwise, the widow never having read the deed, had known nothing about the instrument, and not having gone through the papers in the box could not say whether the deed was in the box. The excellent exposition of controlling rules of law set forth in Wasson v. Collett, supra, and applied to the facts in that decision, amply demonstrates the total failure of the evidence herein to supply the clear and positive degree of proof required to rebut the presumption of delivery of this deed to defendant. Additionally, it is worthy of note that the evidence of two witnesses offered by plaintiff reasonably may be construed as supporting the fact of delivery, after which the grantor sought to recall his act.

 The trial court accorded great weight to our earlier decision in Dowell v. McNeill et al, Okl., 315 P.2d 771. We recognize there is some parallel between the fact situation therein disclosed and the present case. Certain evidentiary elements present in Dowell have been declared to be circumstances for consideration as negating the fact of delivery of a deed. However, we likewise adhere to the rule that a grantor's continued possession and control of property conveyed during his lifetime is insufficient to destroy the presumption of delivery arising from due execution and possession of a deed by the grantee where the parties are parent and child. See Hoskyns v. Hooker et al, Okl., 283 P.2d 1109 and authorities therein cited.

Controlling features of the Dowell case are found in the fact the questioned instrument was recorded after the grantor's death and nearly five years after execution thereof, coupled with the grantor's acts and deeds asserting ownership. These matters were considered in conjunction with other evidence, and provided the basis for the conclusion that the question whether a deed has been delivered so as to vest title in a grantee must depend upon the peculiar facts of each case. Although Syllabus 2 in Dowell recognizes that continued acts of ownership is a circumstance inconsistent with the theory of intentional delivery, this is said to be only a circumstance which "may justify" a finding there has been no delivery operative and effectual to pass title. The peculiar facts apparent herein sufficiently distinguish this matter and preclude application of the decision in Dowell as controlling.

In the present appeal plaintiff's evidence established his own knowledge of grantor's prior conveyance of separate portions of the property to plaintiff and to another brother. Plaintiff admittedly had no knowledge of grantor's affairs, knew nothing of grantor's filing suit to cancel the deed, and first knew of defendant's deed upon learning same included a part of plaintiff's own property. However, defendant cleared this up by deeding this part of the property to plaintiff without consideration in April, 1962. It is true grantor's continued possession and control over the property, the claiming of homestead and payment of insurance are circumstances which may be considered as factors showing non-delivery of the deed. However, it is true also that

such facts are not sufficient to defeat the presumption of delivery arising from due execution and delivery in cases where the grantor and grantee are husband and wife, or parent and child. Hoskyns v. Hooker et al, Okl., 283 P.2d 1109, and authorities therein cited.

Plaintiff's own testimony bearing upon execution and delivery of the deed has been noted. Plaintiff's wife testified concerning a telephone conversation between grantor and defendant, wherein grantor was "mad" and wanted defendant to bring him all of his important papers. The testimony of plaintiff's attorney, being cumulative of other evidence, is not summarized, although the admissibility thereof was questionable in view of 12 O.S.1961, § 385(4).

■ The principal evidence in support of plaintiff's action was elicited from the widow, who married grantor a few months prior to his death. This testimony has been summarized heretofore. Although the witness admittedly did not know the contents of grantor's box, had never read the deed, and was unable to state the deed actually was in the box, she testified at length as to the deed being in grantor's possession and inferentially sought to show defendant had removed same, probably on the occasion of her carrying the box into the room for grantor and defendant to examine the contents, although she was not thereafter present. This witness also was able to testify to conversations with grantor wherein he stated the deed was not to be recorded until after his death. Aside from considerations relative to obvious interest of the witness, it is clear that cancelation of this deed had to be decreed largely upon such testimony if at all. We consider the record evidence herein wholly insufficient to overcome the settled presumptions of law relative to execution and absolute delivery to the defendant rather than conditional delivery. See Little v. Echols, Okl., 269 P.2d 984.

The other ground found by the trial court as supporting the decree canceling the deed was the finding same was given without consideration. The evidence upon this issue is discussed above. Defendant testified concerning the consideration for the deed, that this was money which had been saved out of his own earnings, and that the money had been paid to the funeral home prior to grantor's death, except for the additional charge paid on the day of the funeral. This evidence was fully corroborated by testimony of an unbiased witness who was able to identify the amounts, and the payor from business records and personal recollection.

■ It is elementary that a validly executed deed is presumed to be supported by valuable consideration. The burden of rebutting this presumption rests upon the party asserting invalidity of the instrument. 15 O.S.1961, §§ 114, 115. The evidence upon which the trial court based the finding of lack of consideration has been set out heretofore. The failure of such evidence to overcome the presumption of consideration standing alone is apparent, without recourse to unbiased and direct testimony establishing payment of consideration. In Alexander v. Gee, Okl., 352 P.2d 915, Syllabus 2 states:

> "The testimony of interested litigants, although abundant, if insufficient to induce belief under all the facts and circumstances, is not binding on the trier of facts."

■ Although dealing with a different issue, we believe the language in the first syllabus in Stafford v. McDougal, 171 Okl. 106, 42 P.2d 520, applicable herein:

> "Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud unless the fraud be made clearly to appear; * * *"

This pronouncement should apply with equal force where cancelation is sought upon grounds of lack of consideration and lack of delivery.

The judgment of the trial court is reversed, with directions to set aside the

judgment rendered and to enter judgment for defendant confirming and quieting title as prayed.

HALLEY, C. J., and WILLIAMS, BLACKBIRD and IRWIN, JJ., concur.

JACKSON, V. C. J., and DAVISON, J., dissent.

DAVISON, Justice (dissenting).

I dissent for the reason that I am of the opinion that the judgment of the trial court is supported by the evidence and that said judgment is not against the clear weight of the evidence.